

## NUMBER 13-08-00386-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RAYMOND R. FULP, III, D.O. AND
COLUMBIA RIO GRANDE HEALTHCARE, L.P.,
D/B/A RIO GRANDE REGIONAL HOSPITAL,                    Appellants,

v.

ROBERT MILLER,                                                    Appellee.

On appeal from the 370th District Court of Hidalgo County, Texas.

# OPINION ON REHEARING

**Before Justices Rodriguez, Garza, and Vela**
**Opinion on rehearing by Justice Garza**

After considering the motion for rehearing en banc filed by appellant, Raymond R.

Fulp, III, D.O., we deny the motion; however, we withdraw our opinion and judgment of

January 22, 2009, and substitute the following to make nondispositive clarifications.

## I. Introduction

Appellants, Fulp and Columbia Rio Grande Healthcare, L.P. d/b/a Rio Grande Regional Hospital (the "Hospital"), appeal a judgment denying their motions to dismiss a health care liability claim filed by appellee, Robert Miller. By one issue, Fulp argues that the trial court abused its discretion in denying his motion to dismiss because Miller did not timely submit expert reports that complied with the requirements of section 74.351 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2008). In addition, the Hospital contends by one issue that the trial court abused its discretion in denying its motion to dismiss because Miller failed to serve a copy of his expert reports on the Hospital's attorney in charge.[1] We reverse and remand for proceedings consistent with this opinion.

## II. Factual and Procedural Background

On December 20, 2007, Miller filed his original petition asserting various medical malpractice claims against Fulp, the Hospital, and anesthesiologist Daniel Requenes, M.D.[2] Specifically, Miller took issue with an elective hip revision surgery performed by Fulp on November 18, 2005.

Miller was admitted to the Hospital on November 10, 2005, due to an injury to his right hip. According to his original petition, Miller suffered complications from the November 18, 2005 surgery performed by Fulp, including acute renal failure, post-operative shock, post-operative hemorrhagic anemia, dehydration, pulmonary collapse,

---

[1] Miller has not filed an appellee's brief in this case.

[2] Requenes was non-suited and is not a party to this appeal.

2

and iatrogenic hypotension. These complications required an extensive stay in the intensive care unit and subsequent medical care. After he was discharged from the Hospital, Miller remained on bed rest for two months. He noticed that "[h]is right leg was externally rotated and markedly shorter than the left leg with a very limited range of motion." As a result, Miller remained in Fulp's care for an additional three months. During this time, Fulp took x-rays of Miller's leg. Miller alleged that he repeatedly informed Fulp of his constant pain and that his condition had not improved since the surgery. However, Fulp "reassured Plaintiff [Miller] that 'everything was fine' and that Plaintiff would be able to walk again."

In September 2006, Miller sought a second opinion from another orthopedic surgeon. After this consultation, Miller was told that he needed a second hip revision because x-rays revealed the "hip prosthesis coming through the femur and the prosthesis was floating within the thigh." Miller was also told that "the films showed that the integrity of the wires holding the femur together was poor" and that "the wires had indeed broken in the intervening period and the prosthesis was totally loose." Miller alleged that he "incurred additional expenses for medical care, endured physical pain[,] as well as mental anguish, permanent impairment, and disability . . . ."

On January 16, 2008, attorney Steven Gonzalez filed an original answer on behalf of the Hospital denying Miller's allegations. On January 25, 2008, Fulp filed his original answer denying all of Miller's allegations. On April 18, 2008, Miller filed notice of his expert reports with Fulp's counsel and John R. Lyde, counsel for the Hospital in an unrelated medical malpractice suit. In his notice, Miller attached the expert reports of Jetta M. Brown, M.D., Cindy Miller, R.N., and Gregory S. Goldsmith, M.D.

3

On April 25, 2008, Fulp filed objections to Miller's expert reports and a motion to dismiss. *See id.* § 74.351(b). In his filing, Fulp alleged that the expert reports failed to: (1) set forth the applicable standard of care; (2) identify the alleged breach by Fulp; and (3) identify and explain "any causal link between any alleged breaches and the Plaintiff's complained of injuries." Subsequently, on May 8, 2008, the Hospital filed its motion to dismiss, alleging that Miller had failed to timely serve an expert report and curriculum vitae on its attorney in charge within the 120-day time frame prescribed by section 74.351(a) of the civil practice and remedies code. *See id.* § 74.351(a), (b).

On May 27, 2008, the trial court conducted a hearing on Fulp's objections and motion to dismiss and the Hospital's motion to dismiss. Also on May 27, 2008, Miller filed a response to Fulp's objections and motion to dismiss. In this filing, Miller, for the first time, included Gonzalez in the certificate of service. The trial court denied Fulp's objections and motion to dismiss on June 2, 2008, and the Hospital's motion to dismiss on June 6, 2008. This appeal ensued.[3]

### III. JURISDICTION

Jurisdiction is proper in this Court pursuant to section 51.014(a)(9) of the Texas Civil Practice and Remedies Code. *Id.* § 51.014(a)(9) (Vernon 2008). Section 51.014(a)(9) permits the appeal of an interlocutory order from a district court order that "denies all or part of the relief sought by a motion under Section 74.351(b) . . . ." *Id.*

---

[3] While this case was pending before this Court, Miller moved to non-suit Fulp and the Hospital on October 9, 2008. The trial court granted Miller's motion to non-suit on October 16, 2008. In its order granting Miller's motion to nonsuit, the trial court stated that: "It is, therefore, ordered that Plaintiff Robert Miller's entire cause of action is *dismissed without prejudice* against Defendants Columbia Rio Grande Healthcare, L.P. d/b/a Rio Grande Regional Hospital; and Ray R. Fulp, III, D.O., and that all costs of court be assessed against the party incurring same." (Emphasis added.)

4

## IV. Standard of Review

We review a trial court's decision to dismiss a case pursuant to section 74.351 of the civil practice and remedies code under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). The trial court abuses its discretion if it acted arbitrarily or unreasonably or without reference to any guiding rules or principles. *See Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 220 (Tex. App.–Houston [1st Dist.] 2003, pet. denied).

## V. Fulp's Motion to Dismiss

By his sole issue on appeal, Fulp asserts that the trial court abused its discretion in denying his motion to dismiss because Miller failed to timely serve expert reports that complied with section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6). Specifically, Fulp argues that: (1) Brown and Cindy are not qualified to render opinions as to Fulp's liability; (2) Goldsmith's expert report failed to set forth the appropriate standard of care; and (3) Goldsmith's expert report failed to establish causation. In addition, Fulp contends that the trial court abused its discretion in refusing to award him attorney's fees.

### a. Applicable Law

Section 74.351 of the civil practice and remedies code provides, in relevant part, that:

> (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. . . .

5

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received notice.

. . . .

(*l*) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

. . . .

(r)(6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed.

*Id.* § 74.351(a)-(c), (*l*), (r)(6).

Generally, an expert report's adequacy does not depend on whether the expert uses any particular "magical words." *Windsor v. Maxwell*, 121 S.W.3d 42, 48 (Tex. App.–Fort Worth 2003, pet. denied) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002)). A report is sufficient if it "contains information summarizing and explaining the causal relationship between the doctor's failure to meet the applicable standards of care

6

and the plaintiff's injury." *Id.* (citing *Bowie*, 79 S.W.3d at 53). The expert must explain the basis of "his statements" linking "his conclusions" to the facts. *See Earle v. Ratliff*, 998 S.W.3d 882, 890 (Tex. 1999). Moreover, a "fair summary" is "something less than a full statement" of the applicable standard of care, how it was breached, and how that breach caused the injury. *Spitzer v. Berry*, 247 S.W.3d 747, 750 (Tex. App.–Tyler 2008, pet. denied) (quoting *Palacios*, 46 S.W.3d at 880). "Nonetheless, 'a fair summary must set out what care was expected, but not given' and how that caused the injury." *Id.* (quoting *Palacios*, 46 S.W.3d at 880).

In *Palacios*, the Texas Supreme Court stated that:

[t]he issue for the trial court is whether 'the report' represents a good-faith effort to comply with the statutory definition of an expert report. . . . That definition requires, as to each defendant, a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury. Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document.

46 S.W.3d at 878 (internal citations omitted). An expert report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute in order to represent a good-faith effort. *Id.*; *see Spitzer*, 247 S.W.3d at 751. Additionally, the supreme court fashioned a two-part inquiry for reviewing expert reports. *Palacios*, 46 S.W.3d at 879. "First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit." *Id.*

**b. Discussion**

At the outset, we address Fulp's arguments as to the qualifications of Brown and

7

Cindy to opine on Fulp's liability. Neither Brown's nor Cindy's expert reports specifically analyzed the standard of care, breach of the standard of care, or causation as to Fulp. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). As Miller stated in his April 18, 2008 expert report notice, both Brown's and Cindy's expert reports addressed "the negligence of Defendant COLUMBIA RIO GRANDE HEALTCHARE [sic], L.P. d/b/a RIO GRANDE REGIONAL HOSPITAL . . . ." Only Goldsmith's expert report referenced Fulp with respect to the essential elements delineated in section 74.351(r)(6)—standard of care, breach of the standard of care, and causation. *See id.* Because neither Brown's nor Cindy's expert reports referenced Fulp with respect to the section 74.351(r)(6) elements, we need not address Fulp's argument as to Brown's and Cindy's qualifications to opine on Fulp's liability. *See* TEX. R. APP. P. 47.1. Instead, we will focus on the adequacy of Goldsmith's expert report in addressing Fulp's liability.[4]

In his expert report, Goldsmith noted the following:

### 2. Applicable Standards of Care Relating to Ray R. Fulp, III, M.D.

The standard of care for orthopedic treatment of the post-closed reduction of the right hip of Mr. Miller on and after November 10, 2005 would indicate further non-operative treatment and evaluation. After the closed reduction procedure, a patient [of] Mr. Miller's age and other medical conditions should have been followed with recommendations of restricted activity to reduce the risk of further dislocation. There is no documentation of or imaging studies that show the hip dislocation was due to component malposition. To determine if the components are malpositioned, imaging studies should have been done prior to surgery. This was an elective procedure, and Dr. Fulp should have proceeded with appropriate imaging studies and obtain[ed] old records. There is no documentation that surgical revision and replacement of the femoral prosthesis was indicated, and it was a violation of the applicable standard of medical practice to undertake such procedure on November 18, 2005.

---

[4] Fulp does not challenge Goldsmith's qualifications to render an opinion in this case.

The patient should have been informed of the technical difficulty and complications of revising the well-fixed components as well as given a prognosis and non-operative treatment option.

Dr. Fulp had to cut and split the femur to remove the existing prosthesis and the procedure he undertook and completed resulted in an unstable, painful, and deteriorating joint.

It was further the minimum standard of medical care for Dr. Fulp to follow this patient closely post-surgery and insure that his reconstructed and cabled femur was growing back together and was strong enough to withstand his weight during ambulation. As reflected by the x-rays taken by Dr. Fulp on February 8, 2006, March 14, 2006, and April 4, 2006, and as reflected by his progress notes of the same dates, Dr. Fulp failed to perceive that the condition of the femur and femoral prosthesis was deteriorating and he failed to undertake corrective surgery to prevent further destruction and deterioration of the femur.

Further, it was the standard of care for Dr. Fulp to intervene to repair the failing prosthesis and femur condition or, as did Dr. Basset on September 21, 2006, to refer the patient to another surgeon with the experience and ability to address the failure, such as Dr. Christensen. Dr. Fulp breached the standards of care by his failure to either intervene or refer.

**Causal Connection Between Breach of Standard and Injury to Patient**

As a result of breach of the standard of care by Dr. Fulp as discussed above, Mr. Miller sustained the following injuries/damages:

1. Inability to walk without assistance for 18 months post-surgically;
2. Additional medical expenses;
3. Pain and mental anguish;
4. Extensive and permanent bone loss of the greater trochanter; and
5. Future medical expenses related to the right hip.

Fulp's primary complaints as to Goldsmith's expert report is that Goldsmith failed to set forth the applicable standard of care and that Goldsmith did not establish the causal link between Fulp's alleged breaches of the standard of care and the injuries Miller sustained.

9

In his expert report, Goldsmith was not required to marshal all of the evidence Miller expected to present at trial, and Goldsmith was required only to provide a "fair summary" of the required elements. *See Bowie*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878); *see also Spitzer*, 247 S.W.3d at 750. It is clear from Miller's pleadings that he took issue with: (1) the November 18, 2005 elective surgery conducted by Fulp; and (2) Fulp's failure to intervene or refer him to another specialist after his hip failed to heal properly following the elective surgery. Contrary to Fulp's contentions, Goldsmith's expert report adequately sets forth the standard of care pertaining to Fulp and how that standard of care was breached. However, we agree with Fulp's contention that Goldsmith failed to establish a causal link between Fulp's alleged breaches of the standard of care and the injuries Miller sustained.

The Texas Supreme Court has held that an expert report "cannot merely state the expert's conclusions about these elements. . . . Rather, the expert must explain the basis of his statement to link his conclusions to the facts." *Bowie*, 79 S.W.3d at 52. Because he failed to link his conclusions to the facts, Goldsmith's conclusory statements about the injuries and damages Miller sustained following Fulp's alleged breaches of the standard of care do not suffice to establish the explanation of the causation requirement for expert reports. *See Windsor*, 121 S.W.3d at 49 (citing *Ratliff*, 998 S.W.2d at 890 (noting that the expert must explain the basis of "his statements" linking "his conclusions" to the facts)). Moreover, we are precluded from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See Austin Heart P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.–Austin 2007, no pet.); *Bowie*, 79 S.W.3d at 53 ("The report

must include the required information within its four corners.").  As a result, we conclude that Goldsmith's expert report is deficient as to the causation element; therefore, the trial court abused its discretion in denying Fulp's motion to dismiss.  Accordingly, we sustain Fulp's sole issue on appeal.

**c. The Effect of Miller's Motion for Nonsuit**

Ordinarily, when elements of a timely filed expert report are found adequate by the trial court but ruled deficient by a court of appeals, one thirty-day extension to cure the report may be granted by the trial court upon remand, even if the original 120-day period for filing such a report has expired.  *Leland v. Brandal*, 257 S.W.3d 204, 206-07 (Tex. 2008); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).  However, as previously noted, Miller nonsuited his claims against Fulp and the Hospital while this matter was pending in this Court.  In *Ogletree v. Matthews*, the supreme court noted that section 74.351(c) of the civil practice and remedies code only gives the trial court "discretion to grant a thirty-day extension so that parties may, *where possible*, cure deficient reports."  262 S.W.3d 316, 320 (Tex. 2007) (emphasis added).  Because he has nonsuited his claims against Fulp, Miller is no longer a party, and it is not possible for him to cure Goldsmith's deficient report.  *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 101 (Tex. 2006) (holding that the filing of a nonsuit has the effect of "rendering the merits of the case moot").

However, the Texas Supreme Court recently held in *Villafani v. Trejo* that the filing of a nonsuit does not extinguish a defendant's motion for sanctions, or, in other words, its entitlement to the dismissal of the claim with prejudice, costs, and attorney's fees.  251

11

S.W.3d 466, 470 (Tex. 2008) ("Allowing defendants to seek sanctions . . . for attorney's fees and dismissal with prejudice deters claimants from filing meritless suits.") (citing *Palacios*, 46 S.W.3d at 878); *see* TEX CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 597 (Tex. 1996) (noting that "[i]f a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to 'stop, think and investigate more carefully before serving and filing papers'" and that "Rule 162 merely acknowledges that a nonsuit does not affect . . . a pending sanctions motion; it does not purport to limit the trial court's power to act")[5]; *see also Fox v. Hinderliter*, 222 S.W.3d 154, 158 (Tex. App.–San Antonio 2006, no pet.) (recognizing that a motion to dismiss and for attorney's fees and costs based on a plaintiff's failure to comply with the mandatory statutory requirements of section 74.351(b) constitutes a request for statutory sanctions); *Outpatient Ctr. for Interventional Pain Mgmt., P.A. v. Garza*, Nos. 13-07-00411-CV & 13-07-00762-CV, 2008 Tex. App. LEXIS 4801, at *11 (Tex. App.–Corpus Christi June 26, 2008, no pet.) (mem. op.) (same).

In his motion to dismiss, Fulp requested the dismissal of Miller's suit and costs and attorney's fees, thus constituting a sanctions motion under section 74.351(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *see also Fox*, 222 S.W.3d at 158; *Garza*, 2008 Tex. App. LEXIS 4801, at *11. Because we have found Goldsmith's expert report to be deficient and because a nonsuit does not extinguish a defendant's sanctions motion, we must remand to the trial court to dismiss Miller's claims with prejudice and to determine

[5] Rule 162 of the rules of civil procedure states that a nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief" and that "[d]ismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal." TEX. R. CIV. P. 162.

Fulp's costs and attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *see also Villafani*, 251 S.W.3d at 470; *Palacios*, 46 S.W.3d at 877.

## VI. THE HOSPITAL'S MOTION TO DISMISS

By its sole issue on appeal, the Hospital argues that the trial court abused its discretion in denying its motion to dismiss because Miller failed to timely serve his expert reports on the Hospital's attorney in charge. We agree.

### a. Standard of Review

The ruling under review with respect to the Hospital concerns a purely legal issue: whether the Hospital was served in accordance with section 74.351(a). We review such questions of law de novo. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 871 (Tex. App.–Houston [1st Dist.] 2007, pet. denied); *see also Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (noting that to the extent that the resolution of an issue requires an interpretation of the health care liability statute, a de novo standard applies); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex. App.–El Paso 2001, pet. denied) (same).

### b. Discussion

Section 74.351 does not define the term "serve." Therefore, we must look to the Code Construction Act for guidance. *See Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 459 (Tex. App.–Austin 2006, no pet.). The Code Construction Act states that "'words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.'" *Id.* (quoting TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2005)). "Serve" and "served" have distinct and familiar legal

13

meanings within the context of the rules of civil procedure. *Id.* (citing TEX. R. CIV. P. 21a).

Given the applicability of the rules of civil procedure to health care liability claims, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.002 (Vernon 2005), and the use of "serve" and "served" in the statute, we agree with our sister courts that the Legislature intended for claimants to comply with rule 21a requirements to fulfill the requirements of section 74.351(a). *Gutierrez*, 237 S.W.3d at 872 (citing *Herrera*, 212 S.W.3d at 459; *Kendrick v. Garcia*, 171 S.W.3d 698, 703-04 (Tex. App.–Eastland 2005, pet. denied)).

As recognized by the *Gutierrez* court, "[t]his construction is supported by a legislative change that replaced the word 'furnish' with 'serve'" based on the following:

> Prior to the enactment of Chapter 74, medical-liability claims were governed by article 4590i of the Texas Revised Civil Statutes, which required a health-care-liability claimant to furnish an expert report within 180 days after the claim was filed. TEX. REV. CIV. STAT. ANN. art. 4590i, § 13.01(d), *repealed by* Act of 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 884. When the legislature repealed article 4590i in 2003 and enacted Chapter 74, it replaced the word "furnish" with the term "serve." We presume that the Legislature enacted the statutory change with knowledge of existing law. *See Herrera*, 212 S.W.3d at 459 (citing *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.")). Therefore, we may also presume its awareness of the meaning attached to the word "serve." *Id.*

237 S.W.3d at 872.

Rule 21a authorizes the following four methods for service upon a party: (1) delivery in person, by agent, or by courier-receipted delivery; (2) certified or registered mail; (3) telephonic document transfer; or (4) such other manner as the court in its discretion may direct. TEX. R. CIV. P. 21a. In addition, the party or attorney of record must certify to the court compliance with this rule in writing over signature and on the filed instrument. *Id.*

14

Here, Miller served Lyde with copies of his expert reports in a manner consistent with rule 21a. *See id.* However, the record demonstrates that Gonzalez, not Lyde, filed the Hospital's original answer to Miller's petition on January 16, 2008, which constituted the Hospital's first appearance in this case. Once again, chapter 74 is not clear as to exactly whom a party must serve; section 74.351(a) merely provides that a claimant must serve his expert reports on the "party or the party's attorney." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

Section 74.001(b) states that "[a]ny legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." *Id.* § 74.001(b) (Vernon 2005). Because the rules of civil procedure apply to health care liability claims, *see id.* § 74.002, and because several Texas courts have already concluded that rule 21a governs service in health care liability claims, we conclude the legislature intended also for rule 8, a corollary to rule 21a's service requirements, to apply to health care liability claims. *See Morin v. Boecker*, 122 S.W.3d 911, 914 (Tex. App.–Corpus Christi 2003, no pet.) (holding that "when a party is represented by counsel who has made an appearance, rules 8 and 21a require that all communications be sent to the party's attorney") (citing *Bruneio v. Bruneio*, 890 S.W.2d 150, 155 (Tex. App.–Corpus Christi 1994, no writ) ("[The] rules suggest that . . . notice . . . [be] sent to the attorney in charge if the party is represented, or to the party himself if pro se.")); *see also McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex. 2003) (stating that, in construing a statute, "our primary objective is to determine and give effect to the Legislature's intent") (quoting *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000)); *Prestwood v. Settle*,

No. 03-07-00111-CV, 2008 Tex. App. LEXIS 1458, at *9 n.5 (Tex. App.–Austin Feb. 28, 2008, pet. filed) (noting that there was no dispute that rule 8 of the rules of civil procedure required that expert reports in a health care liability claim to be served on the attorney in charge therefore implicitly concluding that rule 8 applies to health care liability claims).

In the present case, Gonzalez was the attorney in charge because he made the Hospital's initial appearance.[6] *See* TEX. R. CIV. P. 8. As such, Miller was required to serve Gonzalez with the expert reports in accordance with rules 8 and 21a. *See id.*; *see also* TEX. R. CIV. P. 21a. As Miller admitted at the hearing on the Hospital's motion to dismiss, he failed to serve Gonzalez with his expert reports within the 120-day deadline prescribed in section 74.351(a). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Instead, Miller served his expert reports on Lyde under the assumption that Lyde represented the Hospital in this case, even though he actually represented the Hospital in an unrelated medical malpractice case. Clearly, Miller failed to comply with rule 8 and, in turn, did not comply with section 74.351(a). *See* TEX. R. CIV. P. 8; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). We therefore conclude that the trial court abused its discretion in denying the Hospital's motion to dismiss. Section 74.351(b) requires that the trial court dismiss Miller's claims as to the Hospital with prejudice and award the Hospital attorney's fees and costs of court. *See* TEX. CIV. PRAC. & REM. CODE. § 74.351(b).

In its motion to dismiss, the Hospital requested the dismissal of Miller's suit and costs and attorney's fees, thus constituting a sanctions motion under section 74.351(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *see also Fox*, 222 S.W.3d at 158;

---

[6] The record does not reflect that Lyde or any other attorney represented the Hospital in this case.

16

*Garza*, 2008 Tex. App. LEXIS 4801, at *11.  As is the case with Fulp, Miller's nonsuit of the Hospital does not preclude the Hospital from receiving costs and attorney's fees as a result of the trial court's mandatory dismissal of Miller's claims with prejudice.  *See id.*; *see also Villafani*, 251 S.W.3d at 470; *Palacios*, 46 S.W.3d at 877.  Accordingly, we sustain the Hospital's sole issue on appeal.

### VII. HENRICHSON'S MOTION TO DISMISS FOR LACK OF JURISDICTION

In his appellate brief and on this Court's docketing statement, Fulp named Miller's counsel, Preston Henrichson, as a party to the appeal.  *See* TEX. R. APP. P. 32.1(e) (requiring appellant to name in the docketing statement all other parties to the trial court's judgment or order appealed from); *but see* TEX. R. APP. P. 32.4 ("The docketing statement is for administrative purposes and does not affect the appellate court's jurisdiction.").  On December 1, 2008, Henrichson filed a motion to dismiss for lack of jurisdiction.  In his motion, Henrichson noted that this Court does not have jurisdiction over him because he was not a party to the underlying proceedings.

In his response to Henrichson's motion, Fulp relied heavily on the previous version of the medical liability act, former article 4590i, section 13.01(e).  *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01(e), 1995 Tex. Gen. Laws 985, 986 (former TEX REV. CIV. STAT. art. 4590i, § 13.01(e)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.  Former section 13.01(e) provided that if an expert report is not timely filed or a physician or health care provider is not voluntarily non-suited, the court shall:

> enter an order awarding as sanctions against the *claimant or the claimant's attorney*:

17

(1) the reasonable attorney's fees and costs of court incurred by that defendant;

(2) the forfeiture of any cost bond respecting the claimant's claim against the defendant to the extent necessary to pay the award; and

(3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

*Id.* (emphasis added). The corresponding section of the current version of the medical liability act, section 74.351(b), does not explicitly provide that the affected physician or health care provider may obtain attorney's fees from the claimant's attorney. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2008). However, Fulp is correct in noting that section 74.351(b) is not clear as to who is responsible for paying attorney's fees in the event that a health care liability claim is dismissed with prejudice for failure to serve a compliant expert report, and that "[s]ection 74.351(b) mandates an award of attorney's fees against someone."[7] *See id.* What section 74.351(b) does clearly state is that a defendant shall recover costs and attorney's fees upon the trial court's entry of an order dismissing the health care liability claim with prejudice. *See id.* To date, the trial court has not entered an order dismissing Miller's health care liability claims and awarding Fulp costs and attorney's fees. Thus, Fulp's claim for attorney's fees is premature. *See id.*

In any event, Fulp relies on the San Antonio Court of Appeals' decision in *Loeffler v. Lytle Independent School District* to support his contention that Henrichson should be liable for attorney's fees concurrently with Miller. *See* 211 S.W.3d 331, 348 (Tex.

---

[7] We express no opinion as to which party, Miller or Henrichson, is responsible for the payment of an attorney's fees award once Miller's health care liability claim is dismissed with prejudice for failure to timely serve a compliant expert report. That is a determination to be made by the trial court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2008).

App.–San Antonio 2006, pet. denied). We find *Loeffler* to be distinguishable from the instant case.

In *Loeffler*, appellant brought an action involving title to approximately 3.21 acres of land in Atascosa County, Texas. 211 S.W.3d at 336. Contending that Loeffler's action was "legally and factually deficient," the Lytle Independent School District sought sanctions against both appellant and appellant's trial attorney, Ted Kenyon. *Id.* at 337-38. The trial court found Loeffler and Kenyon's conduct to be sanctionable and awarded attorney's costs against Loeffler and Kenyon, jointly and severally. *Id.* at 338. On appeal, both Loeffler and Kenyon challenged the trial court's sanctions award as parties to the appeal. *Id.* In the instant case, however, the trial court never sanctioned Henrichson's conduct and, unlike Kenyon, Henrichson was never made a party to the trial court proceedings.

Based on the foregoing, we conclude that Fulp's request for attorney's fees from Henrichson is not ripe for our review. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); *see also Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998) (noting that ripeness, like standing, is a threshold issue that implicates subject-matter jurisdiction and that the doctrinal purpose of ripeness is to prevent premature adjudication); *City of Weslaco v. Borne*, 210 S.W.3d 782, 787 (Tex. App.–Corpus Christi 2006, pet. denied). We therefore grant Henrichson's motion to dismiss for lack of jurisdiction.

## VIII. Conclusion

Based on the foregoing, we reverse the orders of the trial court denying Fulp's and the Hospital's motions to dismiss. Further, we remand for the trial court to dismiss Miller's case against both Fulp and the Hospital with prejudice and assess reasonable attorney's

fees and costs of court in accordance with section 74.351(b) of the civil practice and remedies code.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

                                                 _____

                                               DORI CONTRERAS GARZA,
                                               Justice

Opinion on rehearing delivered and
filed this the 2nd day of April, 2009.

20