

# NUMBER 13-13-00165-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHRISTUS SPOHN HEALTH SYSTEM
CORPORATION, DOING BUISNESS
AS CHRISTUS SPOHN HOSPITAL
CORPUS CHRISTI-SHORELINE,                                    Appellant,

v.

MINERVA LOPEZ, INDIVIDUALLY AS
WRONGFUL DEATH BENEFICIARY OF
HUMBERTO LOPEZ, DECEASED, ON BEHALF
OF THE ESTATE OF HUMBERTO LOPEZ,
DECEASED, AND ON BEHALF OF ALL
WRONGFUL DEATH BENEFICIARIES,                                 Appellee.

## On appeal from the 214th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Longoria
## Memorandum Opinion by Chief Justice Valdez

Appellant, Christus Spohn Health System Corporation d/b/a Christus Spohn Hospital Corpus Christi—Shoreline ("Spohn"), appeals from the trial court's denial of its motion to dismiss a health care liability claim filed by appellee, Minerva Lopez, individually as wrongful death beneficiary of Humberto Lopez, deceased, on behalf of the estate of Humberto Lopez, deceased, and on behalf of all wrongful death beneficiaries of Humberto Lopez, deceased. By two issues, Spohn contends that appellee's expert report was untimely and that her two expert reports are contradictory and baseless, thus constituting no reports. We affirm.

## I. BACKGROUND

As set out in appellee's brief and pleadings, on May 24, 2010, after the deceased was admitted to Spohn for the treatment of a non-healing left hand ulceration, he was placed on antibiotics. On June 9, 2010, the deceased was discharged to Trisun Care Center–River Ridge for continued wound care of the ulcer on his left hand. According to an expert report filed by Michael P. Zeitlin, M.D., CMD, regarding the standard of care required of Trisun, when the deceased was admitted to Trisun, no other pressure ulcers were documented. On June 29, 2010, the deceased was discharged from Trisun to receive care from his primary care physician. Eventually, the deceased was readmitted to Spohn, and according to appellee, at that time, the deceased's left hand was found to have become mummified. The deceased's medical condition deteriorated, and he was placed in the intensive care unit at Spohn. According to appellee, the deceased had multiple pressure ulcers on his scrotum and groin, which became infected with multiple organisms that progressed to the development of Fournier's gangrene. Due to the gangrene, the deceased underwent multiple surgical procedures in order to eradicate the

2

infection.  The deceased's left arm was also amputated due to the mummification.  The deceased died on May 16, 2011.

Appellee filed a health care liability claim on June 29, 2012 claiming that Spohn's negligence caused the deceased's injuries.  On Friday, October 26, 2012, appellee served Dr. Zeitlin's expert report and curriculum vitae.  Dr. Zeitlin's report only pertains to Trisun's alleged negligence and contains his opinions regarding Trisun's acts and/or omissions that he believes caused the deceased's injuries.  On Monday, October 29, 2012, appellee sent the expert report and curriculum vitae of Christopher Davey, M.D., via certified mail return receipt requested to Spohn.  Dr. Davey's report only pertains to Spohn's alleged negligence and contains his opinions regarding Spohn's acts and/or omissions that he believes caused the deceased's injuries.

On November 16, 2012, Spohn filed a motion to dismiss appellee's claim contending that Dr. Davey's expert report was not timely served within the required 120-day period under chapter 74 of the Texas Civil Practices and Remedies Code.  Spohn also filed its objections to Dr. Davey's expert report and motion to dismiss with prejudice.  Spohn claimed that Dr. Davey's expert report was impermissibly inconsistent with Dr. Zeitlin's expert report and that, therefore, the expert reports amounted to no reports.  Appellee filed responses to Spohn's motions on January 25, 2013.  The trial court held a hearing on the motions to dismiss on March 12, 2013, and after hearing argument, it denied both of Spohn's motions.  This appeal ensued.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision on a motion to dismiss a health care liability claim under an abuse of discretion standard.  *Am. Transitional Care Ctrs. of Tex., Inc. v.*

3

*Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001). "An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding principles." *Moore v. Sutherland*, 107 S.W.3d 786, 789 (Tex. App.—Texarkana 2003, pet. denied) (citing *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)). We may not reverse for abuse of discretion simply because we would have decided the matter differently. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

We may not substitute our judgment for that of the trial court concerning the resolution of factual issues or matters committed to the trial court's discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). The appellant must "establish that the trial court could reasonably have reached only one decision." *Id.* at 840. A trial court has no discretion in determining what the law is or in applying the law to the facts and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.*

Section 74.351 requires a plaintiff to serve on each defendant physician or health care provider whose conduct is implicated by a healthcare liability claim a curriculum vitae of each expert listed in the report and one or more expert reports setting forth the standard of care, breach of the standard of care, and causation. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6) (West, Westlaw through 2013 3d C.S.). An "expert report" is

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6).

A court must grant a motion to dismiss under section 74.351(b) if, after the 120-day deadline has passed, it appears to the court that the report does not represent an objective, good-faith effort to comply with the definition of an expert report. *Id.* § 74.351(l). A "good-faith effort" means that the report "provide[s] enough information to . . . inform the defendant of the specific conduct the plaintiff has called into question . . . [and] a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879. A report cannot constitute a good-faith effort if it omits any of the statutory requirements. *Id.*

The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Id.* at 878. The report does not need to marshal all of the plaintiff's proof, but it must include the expert's opinion regarding the three elements identified in section 74.351(r)(6), which include the standard of care, breach, and the causal relationship. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Palacios*, 46 S.W.3d at 878).

### III. TIMELINESS OF DR. DAVEY'S EXPERT REPORT

By its first issue, Spohn contends that appellee failed to serve Dr. Davey's report within 120 days as required under chapter 74. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (establishing that if a claimant does not timely serve the expert report, the court shall grant the defendant's motion to dismiss the case with prejudice). Spohn argues that Dr. Davey's report was untimely because Spohn did not receive Dr. Davey's report "until many days after the 120th day deadline" and appellee failed to serve the report on the Saturday that was actually the 120th day.

5

Appellee does not dispute that she served Dr. Davey's report on Spohn after literally 120 days had passed. However, appellee argues that because the 120th-day deadline in this case was a Saturday, rule four of the Texas Rules of Civil Procedure applies. *See* TEX. R. CIV. P. 4. Rule four provides a basis for computing deadlines when the end date is a Saturday, Sunday, or a legal holiday. *Id.* Rule four states that in those situations, the "period runs until the end of the next day which is not a Saturday, Sunday or legal holiday." *Id.* Therefore, appellee argues that by serving Dr. Davey's expert report by certified mail on Monday, October 29, 2012, she complied with chapter 74's 120-day requirement. Appellee further responds that she complied with rule 21a of the Texas Rules of Civil Procedure, which states that service is completed when the party sends a document by certified mail return receipt requested. *See* TEX. R. CIV. P. 21a(a). Thus, according to appellee, the expert report was served when she placed it in the mail in compliance with rule 21a.

## A.    Does Texas Rule of Civil Procedure 21a Apply?

Spohn urges us to conclude that rule 21a does not apply to service of expert reports. However, our precedent and the clear precedent of other courts in Texas indicate otherwise. *See Fulp v. Miller*, 286 S.W.3d 501, 510 (Tex. App.—Corpus Christi 2009, no pet.) (op. on reh'g); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Kendrick v. Garcia*, 171 S.W.3d 698, 704 (Tex. App.—Eastland 2005, pet. denied); *see also Otero v. Alonzo*, No. 13–10–00304–CV, 2011 WL 765673, at *3 (Tex. App.—Corpus Christi Mar. 3, 2011, no pet.) (mem. op.) ("A health care liability plaintiff's service of her expert report must comply with rule 21a.") (citations omitted).

6

In *Fulp*, we stated that section 74.351 "does not define the term 'serve,'" and we then applied the Code Construction Act to determine its meaning. *Fulp*, 286 S.W.3d at 510. After recognizing that the rules of civil procedure apply to health care liability claims, we held that "the Legislature intended for [health care] claimants to comply with rule 21a requirements to fulfill the requirements of section 74.351(a)." *Id.* Thus, this Court has already determined that health care liability claimants must comply with rule 21a when serving an expert report. *See id.* Rule 21a provides the methods by which service may be completed by, among other things, certified or registered mail. TEX. R. CIV. P. 21a(a). Pursuant to rule 21a, service by mail is completed "upon deposit of the document, postpaid and properly addressed, in the mail or with a commercial delivery service." *Id.* R. 21a(b)(1). Accordingly, we conclude that by complying with rule 21a, appellee properly completed service of Dr. Davey's report on Monday, October 29, 2012, when she sent it via certified mail return receipt requested. *See id.*; *see also Otero*, 2011 WL 765673, at *3.

## B.    Does Texas Rule of Civil Procedure 4 Apply?

Although appellee served her report using an acceptable method of service, pursuant to rule 21a, on Monday, October 29, 2012, the question remains whether Dr. Davey's report was timely? Rule 4 states the following:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday. Saturdays, Sundays, and legal holidays shall not be counted for any purpose in any time period of five days or less in these rules, except that Saturdays, Sundays, and legal holidays shall be counted for purpose

7

of the three-day periods in Rules 21 and 21a, extending other periods by three days when service is made by mail.

TEX. R. CIV. P. 4.

As stated above in *Fulp*, this Court recognized that the rules of civil procedure apply to health care liability claims. *See Fulp*, 286 S.W.3d at 510. In addition, section 74.351 does not provide a method for computing the 120-day requirement when the end date is a Saturday, Sunday, or a legal holiday. Spohn argues that in that situation, the health care liability plaintiff must still serve the expert report on the defendant that day, even if it is a Saturday, Sunday, or legal holiday, and if the plaintiff fails to do so, the trial court must dismiss the claim.

In *Carpinteyro v. Gomez*, the defendant health care provider argued that the plaintiffs' expert report was untimely because the plaintiff failed to serve the expert report on "Saturday, June 9, 2012—literally the 120th day after the [plaintiffs'] health care liability claim was filed." 403 S.W.3d 508, 510 (Tex. App.—San Antonio 2013, pet. denied). The San Antonio court held that although the plaintiff served the report the following Monday, June 11, 2012, the plaintiffs' expert report had been timely. *Id.* at 512. The court explained that chapter 74 does not provide a method for computing the end of the 120-day period, and that there is no conflict between chapter 74 and rule four. *Id.* at 511. It reasoned that absent a conflict between chapter 74 and rule four, rule four provides the method for computing section 74.351(a)'s end date that occurs on a Saturday, Sunday, or legal holiday. *Id.* at 512; *see also Fulp*, 286 S.W.3d at 510.

We agree that there is no conflict between chapter 74 and rule four. *See Carpinteyro*; *see also Eikenhorst v. Wellbrock*, No. 01–07–00459–CV, 2008 WL 2339735, at *11 (Tex. App.—Houston [1st Dist.] June 5, 2008, no pet.) (mem. op.) (assuming that

8

rule four applies to the deadline for filing objections to the expert report and stating "objections to the [expert's] report were due on December 16. Because December 16, 2006 was a Saturday, the deadline to file was extended to December 18, the date Eikenhorst served his objections"). Moreover, because rule 21a applies to service of an expert report and allows for service to be completed by certified mail, we cannot conclude that a plaintiff is required to serve an expert report on Saturday, Sunday, or a legal holiday. Rule four specifically addresses this particular situation and no other rule provides otherwise. Thus, because the 120-day period ended on Saturday, rule four allowed appellee to serve the expert report on the following Monday. *See* TEX. R. CIV. P. 4. Accordingly, Dr. Davey's expert report was timely served. *See id.* We overrule Spohn's first issue.

## IV. SUFFICIENCY OF THE EXPERT REPORTS

By its second issue, Spohn contends that Dr. Davey's report was inadequate because (1) Dr. Davey only reviewed the "Shoreline records found in the nursing home records or Dr. Vela's office chart"[1]; and (2) Dr. Davey's report contradicts Dr. Zeitlin's report.

### A. The Reports

In his report, Dr. Davey set out the standard of care that Spohn was required to follow in treating and preventing the deceased's ulcers. He stated that the standards of care applicable to Spohn and its nurses and staff included, but were not limited to the following: (1) "The standard of care required [Spohn] to monitor and treat the pressure

---

[1] Dr. Vela treated the deceased while he was suffering from the wounds at issue in this case.

9

ulcer documented on [the deceased's] left heel"; and (2) "The standard of care required [Spohn] to institute standard and recognized precautionary measures for [the deceased] to prevent the development of pressures sores, including those that might lead to *a severe ischio-rectal abscess*." (Emphasis added). Dr. Davey claimed that Spohn breached the standards of care by: (1) "failing to institute standard and recognized precautionary measures for [the deceased] to prevent the development of pressures sores"; (2) failing to place the deceased "on an air mattress with padding to areas of boney prominence"; and (3) failing to reposition the deceased "every two hours to relieve the pressure on areas of boney prominence." Finally, Dr. Davey opined that there was a causal relationship between the breaches of the standards of care and the injuries to the deceased. Dr. Davey explained causation as follows:

> The open wound acts as an entrance for bacteria into the body. When pressure sores are permitted to progress and are not kept clean, the ulcer itself becomes infected. Where his infection is permitted to progress, as it did in [the deceased's] case, the wound worsens as does the patient's condition. Due to the breaches in the standard of care set forth above, [the deceased] developed an ischial abscess while a patient at [Spohn] that became Fournier's gangrene. Fournier's gangrene is a multimicrobial condition that is very aggressive and requires immediately surgical treatment. It has a high mortality, even with aggressive surgical treatment, as here. It is also extremely painful. Due to the breaches in the standard of care that resulted in the development and progression of [the deceased's] pressure sores, [the deceased] underwent multiple painful debridement procedures. Ultimately, after many months of intravenous antibiotics and multiple surgical procedures, [the deceased] passed away from sepsis (systemic infection). In reasonable medical probability, had [Spohn] met the standard of care, [the deceased] would not have developed the abscess that progressed to Fournier's gangrene and, ultimately, caused or substantially contributed to his death.

According to Dr. Davey, "it appears that the Fournier's gangrene (gangrene of the genitals and groin) developed in the hospital and was so severe that it was essentially incurable."

In sum, Dr. Davey addressed injuries that he believed Spohn caused to the deceased including a pressure sore on the deceased's left heel, an ischio-rectal abscess, and "Fournier's gangrene" of the genitals and groin area. Dr. Davey opined that if Spohn had followed the standards of care as explained above, the deceased would not have developed the "Fournier's gangrene."[2]

## B.    Discussion

Here, Spohn asked the trial court to look outside the four corners of Dr. Davey's report and to review Dr. Zeitlin's report that addressed the standards of care and breaches of another entity, Trisun, in order to determine whether Dr. Davey's report constituted a good faith effort as to Spohn. However, as previously stated, a trial court is not allowed to look outside the four corners of the expert report to make such a determination. *See also Pediatrix Med. Group, Inc. v. Robinson*, 352 S.W.3d 879, 884 (Tex. App.—Dallas 2011, no pet.) (recognizing that "[t]he statute does not require that a single expert report address all liability and causation issues with respect to a [single] health care provider").

Moreover, on appeal, Spohn is challenging the merits of Dr. Davey's opinion on the basis that his opinion is inconsistent with Dr. Zeitlin's opinion. But, a plaintiff is not required *to prove* the merits of its case in its expert report. *See Palacios*, 46 S.W.3d at 879 (reasoning that, to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits). Instead, the plaintiff is required to provide "a

---

[2] In his report, Dr. Zeitlin stated that he believed that Trisun breached the standard of care by, among other things, (1) failing to properly treat the deteriorating wound on the deceased's hand, (2) failing to monitor and treat the pressure ulcer that had already developed on the deceased's scrotum, (3) failing to consult a surgeon when the deceased's wound on his hand deteriorated, and (4) failing to prevent the development of a pressure ulcer on the deceased's buttocks. Dr. Zeitlin's report addressed the deceased's injuries that included deterioration of his wound on his hand, mistreatment of an preexisting wound on the deceased's scrotum, and the development of a pressure ulcer on the deceased's buttocks while a patient at Trisun.

fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i). And to avoid dismissal, the report must present an objective good faith effort to comply with those requirements. *Id.* A "good faith effort" in this context simply means a report that does not contain a material deficiency. *Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011). "The report must fulfill the dual purpose of notifying each defendant of the specific conduct called into question and providing support for a trial court to conclude the claims have merit." *Eichelberger v. St. Paul Med. Ctr.*, 99 S.W.3d 636, 638–39 (Tex. App.—Dallas 2003, pet. denied).

Here, as explained above, Dr. Davey has complied with section 74.351(a) by summarizing the standards of care Spohn was required to follow, how Spohn breached those standards, and the causal relationship between Spohn's failures and the injuries sustained by the deceased, specifically the development of the "Fournier's gangrene" in the deceased's genitals and groin area. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) ("If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. . . . In sum, an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case."). The report represents a good faith effort because it informs Spohn of the specific conduct appellee has called into question and it provides a basis

for the trial court to conclude that the claims have merit.[3]  *Id.*  Although evidence may later prove that Dr. Davey's opinion is incorrect, that is not a reason to conclude at this stage of the proceedings that his report is inadequate and that appellant's claims should be dismissed.  *See Fagadau v. Wenkstern*, 311 S.W.3d 132, 139 (Tex. App.—Dallas 2010, no pet.) ("The possibility that facts may later be discovered that prove Dr. Goldman's opinions on causation are incorrect is not a basis for holding the report insufficient under section 74.351."); *Methodist Hosp. v. Shepherd–Sherman*, 296 S.W.3d 193, 200 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that although discovery could later prove that a doctor's opinion is wrong, that is not a basis for holding report insufficient under chapter 74).

Spohn cites no authority, and we find none, requiring a trial court to review the expert reports concerning separate defendants requiring different standards of care together in order to determine whether there are any inconsistencies.  In other words, the plaintiff is required to file expert reports for each defendant and each expert report must satisfy chapter 74's requirements for each defendant.  If the plaintiff files separate reports regarding separate defendants that are in compliance with section 74.351, we cannot conclude that the trial court must read these separate reports together to determine which doctor is correct or incorrect.  The only authority we have found requires that the trial court review only the four corners of the expert report when deciding whether it constitutes a good faith effort.[4]  *See Palacios*, 46 S.W.3d at 878.

---

[3] Spohn has not challenged Dr. Davey's qualifications.

[4] We note that under section 74.351, a plaintiff is allowed to provide more than one expert report in order to satisfy the requirements as to one defendant.  However, that is not what happened in this case. Here, appellee filed two separate reports regarding two separate unrelated defendants.

Finally, Spohn argues that Dr. Davey only reviewed the records found in "the nursing home records or Dr. Vela's office chart." We do not find any merit to this argument because Dr. Davey's report contains the required elements as previously discussed and constitutes a good faith effort to comply with the statute. Accordingly, we conclude that the trial court did not abuse its discretion when it denied Spohn's motion to dismiss. We overrule Spohn's second issue.

## V.    CONCLUSION

We affirm the trial court's denial of Spohn's motion to dismiss appellee's health care liability claim.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
17th day of July, 2014.