

# NUMBER 13-09-00372-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**KNAPP MEDICAL CENTER,**                           **Appellant,**

**v.**

**JUANITA MOLINA,**                                  **Appellee.**

### On appeal from the 332nd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

This case involves claims of sexual abuse allegedly perpetrated against appellee, Juanita Molina, by Bernardino Pedraza, L.V.N., a vocational nurse employed by appellant, Knapp Medical Center.[1] Knapp appeals the trial court's denial of its motion to dismiss Molina's health care liability claims pertaining to the alleged incidents of sexual abuse. By one issue, Knapp asserts that the trial court erred in denying its motion to dismiss because Molina failed to file an expert report within 120 days of filing her original petition, as required by section 74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009). We affirm.

---

[1] Pedraza is not a party to this appeal.

I. BACKGROUND

On July 4, 2006, Molina was admitted to Knapp's emergency room complaining of severe abdominal pain.[2] Upon admission to Knapp, Molina was assigned to a room where Pedraza conducted an examination of Molina. While in the room, Pedraza allegedly ordered Molina to disrobe and put on a hospital gown while Pedraza remained in the room. Pedraza then conducted an examination of Molina in which she alleged that Pedraza: (1) inappropriately lifted her hospital gown up to her neck, exposing her completely; (2) performed a breast exam on both of her breasts; (3) asked her if she had discharge from her nipples and if she previously had breast augmentation; and (4) pulled her panties down well below her buttocks, which was much lower than necessary, to administer an injection for pain. Molina also alleged that Pedraza refused to allow her husband to enter the hospital room, allegedly because he was accompanied by a child. Finally, Molina alleged that Pedraza repeatedly rubbed her breasts while conducting "'level of consciousness checks' with no other nurse, attendant[,] or aide present," even though Molina was awake and alert. Molina stated that these checks occurred periodically throughout the evening that she was at Knapp.

On June 11, 2008, Molina filed her original petition alleging causes of action for: (1) negligence and medical malpractice against Pedraza; and (2) negligent hiring, supervision, training, and retaining against Knapp. Molina also alleged that Knapp was vicariously liable for Pedraza's alleged misconduct under the doctrine of respondeat superior. On October 3, 2008, Molina timely served Knapp with the expert report and curriculum vitae of Patricia Squires, R.N. *See id.* However, in serving Knapp with Squires's expert report, Molina inadvertently provided Knapp only with the first three pages of the five-page report. The remaining two pages of the report that were not provided specifically addressed Knapp's liability.

On October 23, 2008, Knapp filed a motion to dismiss Molina's claims, asserting that

---

[2] Molina was later diagnosed with appendicitis.

Molina had failed to timely file a compliant expert report pursuant to section 74.351(a) of the civil practice and remedies code. *See id.* § 74.351(a)-(b). Upon receiving Knapp's motion to dismiss, Molina filed a response in the trial court and moved the trial court to grant her an extension of thirty days to file an expert report in the event that the trial court found the report to be deficient. *See id.* § 74.351(c). She also notified Knapp that she timely sent a copy of Squires's expert report and curriculum vitae on October 3, 2008, and that her records reflected that the report was timely served. Knapp subsequently responded to Molina's letter, acknowledging that it had received Molina's expert report on October 6, 2008, but that the report only addressed the requisite elements of Molina's health care liability claim as to Pedraza and that the report failed to mention Knapp whatsoever.

On October 31, 2008, after reviewing the case file, Molina acknowledged that Knapp was inadvertently provided an incomplete copy of the expert report and that this error was unintended. Thereafter, Molina faxed to Knapp a complete copy of the expert report, which included Squires's statements specifically referencing Knapp's liability. However, the complete report was served on Knapp after the 120-day deadline had expired. *See id.* § 74.351(a). As a result, Knapp re-urged its motion to dismiss Molina's claims for failure to timely provide an expert report. The trial court conducted a hearing on Knapp's motion to dismiss and denied the motion. This interlocutory appeal followed. *See id.* § 51.014(a)(9) (Vernon 2008).

## II. JURISDICTION

Section 51.014(a)(9) of the Texas Civil Practice and Remedies Code permits the appeal of an interlocutory order from a district court order that "denies all or part of the relief sought by a motion under Section 74.351(b) . . . ." *Id.* Here, Knapp appeals the trial court's denial of its motion to dismiss Molina's health care liability claims on the basis that Molina failed to timely file an adequate expert report, as required by section 74.351(a) of the civil practice and remedies code. *See id.* § 74.351(a)-(b). Thus, jurisdiction is proper

3

in this Court. *See id.* § 51.014(a)(9).

### III. STANDARD OF REVIEW

We review a trial court's decision to deny a motion to dismiss a health care liability claim under an abuse of discretion standard. *See Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

### IV. APPLICABLE LAW

The parties do not dispute that Knapp is a health care provider and that Molina's claims are health care liability claims within the context of chapter 74 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11)-(13) (Vernon 2005). A plaintiff asserting a health care liability claim must provide each defendant physician and health care provider an expert report containing the expert's curriculum vitae and

> a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see Palacios*, 46 S.W.3d at 877. The expert report must be served upon each party or the party's attorney "not later than the 120th day after the date the original petition was filed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); *see Fulp v. Miller*, 286 S.W.3d 501, 506-07 (Tex. App.–Corpus Christi 2009, no pet.). If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in [section 74.351(r)(6)]." *Bowie Mem'l Hosp. v.*

4

*Wright*, 79 S.W.3d 48, 51-52 (Tex. 2002); *see Palacios*, 46 S.W.3d at 878. To constitute a "good faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *see Palacios*, 46 S.W.3d at 879 ("A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. Nor can a report meet these purposes and thus constitute a good-faith effort if it omits any of the statutory requirements."). The trial court should look no further than the report itself, because all the information relevant to the inquiry should be contained within the document's four corners. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878); *see Spitzer v. Berry*, 247 S.W.3d 747, 750 (Tex. App.–Tyler 2008, pet. denied) (noting that an expert report need not marshal all of plaintiff's proof in order to represent a good-faith effort; however, it must include the expert's opinion on each of the elements identified in section 74.351(r)(6)).

## V. ANALYSIS

In its sole issue, Knapp contends that the trial court erred in denying its motion to dismiss because Molina failed to timely serve Squires's expert report within 120 days of filing suit. In particular, Knapp argues that the version of Squires's report that was timely served did not mention Knapp and did not address the requisite standard of care, breach, and causation elements as to Knapp and, therefore, did not constitute a good-faith effort to comply with section 74.351(a) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Knapp further argues that inadvertence and mistake are not a basis for extending the 120-day deadline; thus, Molina did not cure the allegedly deficient expert report by providing a complete copy more than twenty days after the 120-day deadline had expired. Molina asserts that the trial court did not abuse its discretion in denying Knapp's motion to dismiss because Squires's expert report implicated Knapp and, thus, satisfied the expert report requirement for vicarious liability as to Knapp. In addition,

5

Molina contends that Knapp waived all of its complaints pertaining to the expert report because it failed to object to the sufficiency of the report within twenty-one days after Molina served the report upon Knapp. *See id.*

### 1. Vicarious Liability of Health Care Providers

When a plaintiff's claim against a health care provider is not for direct negligence, but is based on the conduct of an employee through the doctrine of respondeat superior, the expert report need not identify the health care provider by name or include an opinion about how the employee was acting in the course and scope of employment for the health care provider. *See Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.–Dallas 2006, no pet.); *see also RGV Healthcare Assocs. v. Estevis*, No. 13-08-00113-CV, 2009 Tex. App. LEXIS 5098, at *19 (Tex. App.–Corpus Christi July 2, 2009, pet. filed). In fact, a medical expert would not be qualified to render such an opinion on the legal issue of vicarious liability. *See Dale*, 188 S.W.3d at 879 n.1; *see also Estevis*, 2009 Tex. App. LEXIS 5098, at **19-20; *In re CHCA Conroe, L.P.*, No. 09-04-453-CV, 2004 Tex. App. LEXIS 10481, at *3 (Tex. App.–Beaumont Nov. 23, 2004, orig. proceeding) (mem. op.) ("The conduct by the hospital on which the agency relationship depends is not measured by a medical standard of care. These are principles of agency law on which no expert report is required.")).

If the report identifies conduct by the health care provider's employee, the health care provider is implicated, and as long as the report adequately addresses the standard of care applicable to the employee, how the employee breached the standard of care, and that the breach caused the plaintiff's injury, it is sufficient as against the health care provider to satisfy the expert report requirement for the vicarious liability claims. *See Dale*, 188 S.W.3d at 879; *see also Casados v. Harris Methodist H-E-B*, No. 02-05-080-CV, 2006 Tex. App. LEXIS 6357, at *12 (Tex. App.–Fort Worth 2006, no pet.) (mem. op.) (holding that plaintiff satisfied the expert report requirements with respect to vicarious liability claims by filing an expert report detailing the negligence of doctors, for whose actions the hospital

6

was liable).

**2. Squires's Initial Expert Report**

Here, Squires opined that Pedraza, as a vocational nurse for Knapp, was charged with "[e]nsur[ing] all his patients, including Mrs. Molina, receive adequate professional care and supervision to enhance the triage, assessment, diagnosing, and treatment process as effectively and efficiently as possible while maintaining dignity, privacy[,] and individuality according to her specific nursing and medical needs and appropriate intervention." Squires also stated that Pedraza was also supposed to "[a]dequately, effectively[,] and consistently implement measures to promote safety, well[-]being[,] and perseverance of a professional patient/nurse relationship and to prevent any untoward behaviors that cross the professional line, or cause any accidents, injury[,] or stress to patients who are seeking professional nursing and medical assessments and intervention." With respect to the breach and causation elements, Squires's expert report provided the following:

> Specifically, what Bernardino Pedraza, LVN failed to do, and should have done, in his care of Mrs. Molina, in order to meet the applicable standard of nursing care, included, but not limited to the following:
>
> 1. Failure to ensure that all his patients, including Mrs. Molina, receive adequate professional care and supervision to enhance the triage, assessment, diagnosing[,] and treatment process as effectively and efficiently as possible while maintaining privacy, dignity[,] and individuality according to her specific medical and nursing needs and appropriate interventions. *Specifically on July 4, 2006 when Mrs. Molina went to the Emergency Room at Knapp Medical Center to seek professional medical intervention for acute right lower quadrant abdominal pain. Instead, Mrs. Molina was sexually assaulted by Bernardino Pedraza, LVN as evidenced by the following. When a patient complains of abdominal pain, specifically in an Emergency Room setting, it is not necessary for an RN or an LVN to perform breast exams. As well as, during the assessment and reassessment phase[,] it is not necessary for an RN or an LVN to do "Level of Conscious" exams on patients' [sic] who are awake, alert[,] and verbally communicating.* Mr. Pedraza's actions demonstrated unprofessional conduct and an abuse of his position of power, as a professional nurse, over Mrs. Molina's vulnerable ill state and by crossing this professional line, Mr. Pedraza, LVN violated the Nurse Practice Act, section 301, rule 217.11 and Unprofessional Conduct rule 217.12.
>
> 2. Failure to adequately, effectively[,] and consistently implement measures to promote safety, well[-]being[,] and perseverance of a

7

*professional patient/nurse relationship and to prevent any untoward behaviors that cross the professional line, accidents or undo [sic] injury or stress to patients who are seeking professional nursing and medical assessments and interventions. Mr. Pedraza, LVN acted in an unprofessional manner when he conducted a nonconsensual and unwarranted breast exam and conducted unnecessary "Level of Conscious" exams. Mr. Pedraza, LVN took advantage of his professional position of power over Mrs. Molina and in doing so; he traumatized her and her family. He made her feel "dirty," humiliated, embarrassed[,] and distraught[,] which[,] in turn[,] caused increased stress and pain and created a total mistrust for the male medical profession. Psychological damage is often harder to repair than physical, specifically when it's someone you trust. It could take years to overcome such a horrible experience.*

(Emphases added.)

In analyzing the first three pages of Squires's report that were timely served, we find that the report adequately addressed the requisite elements as to Pedraza, informed defendants of the conduct called into question, and provided the trial court with sufficient information to determine whether Molina's claims had merit. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *see also Palacios*, 46 S.W.3d at 879. Because Squires's report adequately addressed the requisite elements as to Pedraza, an employee of Knapp, we conclude that the first three pages of the report implicated Knapp and satisfied the expert report requirement as to Molina's vicarious liability claims.[3] *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008) (per curiam) (stating, in a case where the health care provider was not mentioned in the underlying expert report, that "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicated the actions of that party's agents or employees is sufficient"); *Dale*, 188 S.W.3d at 879; *see also Casados*, 2006 Tex. App. LEXIS 6357, at *12.

### 3. Molina's Claims of Negligent Hiring, Supervision, Training, and Retention Claims

In her original petition, Molina pleaded, inter alia, that Knapp was liable for

---

[3] Although it is not necessary to specifically mention a health care provider in an expert report in order to implicate the provider, Squires noted several times in the first three pages of her expert report that Molina was admitted to Knapp's emergency room on July 4, 2006, and that while in the care of one of Knapp's employees, Pedraza, the events in question transpired. *See Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.–Dallas 2006, no pet.); *see also at RGV Healthcare Assocs. v. Estevis*, No. 13-08-00113-CV, 2009 Tex. App. LEXIS 5098, at *19 (Tex. App.–Corpus Christi July 2, 2009, pet. filed). This language further supports our conclusion that Squires's expert report sufficiently implicated Knapp.

negligently hiring, supervising, training, and retaining Pedraza as an employee. Specifically, Molina alleged that Pedraza "had a history of and predilection for molesting patients, and was a person of dubious moral character and unfit to be entrusted with the responsibility of providing nursing care" and that Knapp was responsible for not taking action against Pedraza in light of past allegations of sexual misconduct. The portion of Squires's expert report that was timely served provides that: (1) Pedraza was an ER nurse at Knapp Medical Center; and (2) Squires relied upon Knapp's website which provides a list of patient rights and responsibilities. The context of Squires's report clearly implicates Knapp's role as Pedraza's supervisor. However, neither before the trial court nor on interlocutory appeal has Knapp asserted that Squires's report was deficient as to Molina's claims for negligent hiring, supervision, training, and retention.[4] *See* TEX. R. APP. P. 33.1; *Estate of Veale v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 242 (Tex. App.–Houston [14th Dist.] writ denied) (holding that the burden is on the complaining party to present a sufficient record to the appellate court to show error requiring reversal); *see also RGV Healthcare Assocs.*, 2009 Tex. App. LEXIS 5098, at **21-22; *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, No. 14-08-00762-CV, 283 S.W.2d 96, 2009 Tex. App. LEXIS 2410, at *14 (Tex. App.–Houston [14th Dist.] Apr. 9, 2009, pet. filed) (holding that a professional association's objection regarding the sufficiency of an expert report's opinion on a claimant's vicarious liability claims against the association is waived when a proffered expert report detailing the association's doctor's conduct sufficiently implicated the

---

[4] Knapp merely argued in its motion to dismiss that Molina failed to timely file a compliant expert report. Knapp did not specifically mention any of Molina's various claims against it, and Knapp appeared to argue that because Molina did not file a *complete* expert report until after the 120-day deadline had past, the portion of the expert report that was timely served constituted no report at all. However, Knapp's argument that Molina did not timely serve any report at all is belied by our conclusion that the portion of the expert report that was timely served implicated Knapp under the doctrine of vicarious liability. Furthermore, even had we agreed with Knapp's contention, Molina may be entitled to a remand for consideration of a thirty-day extension. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *see also Ogletree v. Matthews*, 262 S.W.3d 316, 320-31 (Tex. 2007) (stating that the trial court is empowered with the discretion to grant claimants a thirty-day extension to cure deficient, but curable, expert reports). Nevertheless, in our analysis, we only examined the pages of Squires's expert report that were timely served and concluded that those pages implicated Knapp under the doctrine of vicarious liability; therefore, we need not address Knapp's contentions that inadvertence and mistake do not extend the 120-day deadline because they are not dispositive to this appeal. *See* TEX. R. APP. P. 47.1.

association and the association did not object).  Therefore, based on the foregoing, we overrule Knapp's sole issue on appeal.

## VI. Conclusion

Having overruled Knapp's sole issue, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 19th day of November, 2009.