ACCEPTED
04-15-00136-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/20/2015 6:57:39 PM
KEITH HOTTLE
CLERK

CASE NO. 04-15-00136-CV

IN THE COURT OF APPEALS FOR THE
FOURTH JUDICIAL DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/20/2015 6:57:39 PM
KEITH E. HOTTLE
Clerk

GERALD HARRINGTON, M.D.,

Appellant

vs.

SANDRA SCHROEDER AND DUANE J. RAMOS, INDIVIDUALLY AND
AS ALL HEIRS OF THE ESTATE OF SYLVIA RAMOS, DECEASED,

Appellees

APPEAL FROM CAUSE NUMBER 2014-CI-06284
288TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
JUDGE JOHN D. GABRIEL

## APPELLANT'S BRIEF

Ronald G. Hole
State Bar No. 09834200

HOLE & ALVAREZ, L.L.P.
612 W. Nolana Loop, Ste 370
P.O. Box 720547
McAllen, Texas 78504
Telephone:  (956) 631-2891
Telecopier:  (956) 631-2415
E-Mail:  Mail@HoleAlvarez.com

ORAL ARGUMENT REQUESTED                    April 20, 2015

CASE NO. 04-15-00136-CV

IN THE COURT OF APPEALS FOR THE
FOURTH JUDICIAL DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

GERALD HARRINGTON, M.D.,

Appellant

vs.

SANDRA SCHROEDER AND DUANE J. RAMOS, INDIVIDUALLY AND
AS ALL HEIRS OF THE ESTATE OF SYLVIA RAMOS, DECEASED,

Appellees

APPEAL FROM CAUSE NUMBER 2014-CI-06284
288TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
JUDGE JOHN D. GABRIEL

**APPELLANT'S BRIEF**

Ronald G. Hole
State Bar No. 09834200

HOLE & ALVAREZ, L.L.P.
612 W. Nolana Loop, Ste 370
P.O. Box 720547
McAllen, Texas 78504
Telephone: (956) 631-2891
Telecopier: (956) 631-2415
E-Mail: Mail@HoleAlvarez.com

## IDENTITY OF PARTIES AND COUNSEL

**Appellant/Defendant:**
Gerald Harrington, M.D.
c/o Hole & Alvarez, L.L.P.
P. O. Box 720547
McAllen, Texas  78504-0547

**Counsel for Appellant:**
Ronald G. Hole
Hole & Alvarez, L.L.P.
P. O. Box 720547
McAllen, Texas  78504-0547
Telephone:  (956) 631-2891
Telecopier:  (956) 631-2415
E-Mail:  Mail@Hole&Alvarez.com

**Appellees/Plaintiffs:**
Sandra Schroeder,
Duane J. Ramos and
Estate of Sylvia Ramos, Deceased
c\o Byron Miller
Law Offices of Pat Maloney, P.C.
322 W. Woodland Avenue
San Antonio, Texas 78212

**Counsel for Appellees:**
Byron Miller
Law Offices of Pat Maloney, P.C.
322 W. Woodland Avenue
San Antonio, Texas 78212
Telephone:  (210) 735-2233
Telecopier:  (210) 735-8431
E-Mail:
Byron@Maloneylawgroup.com

# TABLE OF CONTENTS

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Record References. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Party References. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

      Did the Trial Court Abuse its Discretion in Failing to Dismiss
      Plaintiffs' Health Care Liability Claims When Plaintiffs Failed to
      Serve Appellant with a Proper Section 74.351 Expert Report?. . . . xi

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      ISSUE PRESENTED (RESTATED):  The Trial Court Abused its
      Discretion in Denying Defendant's Motion for Dismissal Because
      Section 74.351(b) of the Texas Civil Practice & Remedies Code
      Clearly Mandates Such a Dismissal When a Proper Expert Report
      Is Not Timely Served... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           A.    An Abuse of Discretion Standard of Review Applies to
                 the Denial of a Motion for Dismissal Pursuant to
                 Section 74.351.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. The Expert Report Served by Plaintiffs Did Not Represent a "Good Faith" Effort to Comply with Section 74.351.. . . . . . . . . . . . . . . . . . . . . . . . . 5

    1. The Section 74.351 Expert Report Requirements are Clear and Unambiguous. . . . . . 5

    2. Dr. Lipson's Report is Deficient in Two Areas, as Demonstrated by the Relevant Statute and Applicable Case Law. . . . . . . . . . . . . . . . . . . . . . . 7

        (a) The Qualifications of Dr. Lipson are Not Adequate to Demonstrate Competence to Testify as to Negligence and Causation . . . . 7

            (1) Qualifications as to Standard of Care Opinions. . . . . . . . . . . . . . . . . . . 9

            (2) Qualifications as to Medical Causation Opinions. . . . . . . . . . . . . 13

        (b) No Causal Link Was Established in Plaintiffs' Expert Report. . . . . . . . . . . . . . 17

    3. Conclusions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

C. The Trial Court's Failure to Award Attorney's Fees was Also an Abuse of Discretion.. . . . . . . . . . . . 28

D. Conclusions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

-iv-

Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Index of Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

> Tab 1     Order Denying Defendant Gerald Harrington, M.D.'s Motion for Dismissal Pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code
>
> Tab 2     Tex. Civ. Prac. & Rem. Code Ann. §74.351 (West)

# INDEX OF AUTHORITIES

## Cases

*Abilene Diagnostic Clinic v. Downing* 233 S.W.3d 532
(Tex.App.–Eastland 2007, pet. filed). . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Am. Transitional Care Cntrs. of Texas, Inc. v. Palacios,*
46 S.W.3d 873 (Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 18, 30

*Alfonso v. Bracamontes*, 2005 WL 1693677
(Tex.App.–Corpus Christi-Edinburg, July 21, 2005, no pet.). . . . . . . . . . . 6

*Arthur Anderson & Co. v. Perry Equipment Corp.,*
945 S.W.2d 812 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Austin Heart v. Webb*, 228 S.W.3d 276
(Tex.App.–Austin 2007, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baptist Hosp. of South Texas v. Carter*,
2008 WL 2917109 (Tex.App.–Beaumont July 31, 2008, no pet.). . . . . . . 18

*Baylor College of Med. v. Pokluda*, 283 S.W.3d 110
(Tex.App.-Houston [14th Dist.]) 2009, no pet.). . . . . . . . . . . . . . . . . . . 7, 8

*Bocquet v. Herring*,
972 S.W.2d 19 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bowie Memorial Hospital v. Wright*,
79 S.W.3d 48 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . 6, 18, 19, 22

*Buck v. Blum,* 130 S.W.3d 285
(Tex.App.-Houston [14th Dist.] 2004, no pet.). . . . . . . . . . . . . . . . . . . . 5

*Cameron v. Terrell & Garrett, Inc.*,
618 S.W.2d 535 (Tex.1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cuellar v. Warm Springs Rehab. Found.*,
No. 04-6-00698-CV, 2007 WL 3355611
(Tex.App.–San Antonio Nov. 14, 2007).. . . . . . . . . . . . . . . . . . . . . . . . 14

*Downer v. Aquamarine Operators, Inc.,*
701 S.W.2d 238 (Tex. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Earle v. Ratliffe*, 998 S.W.2d 882 (Tex. 1999).. . . . . . . . . . . . . . . . . . . 18

*Fulp v. Miller*, 286 S.W.3d 501
(Tex.App.–Corpus Christi-Edinburg 2009, no pet.). . . . . . . . . . . . . . 20, 22

*Gray v. CHCA Bayshore, L.P.*,189 S.W.3d 855, 859
(Tex.App.–Houston [1st Dist.] 2006, no pet.). . . . . . . . . . . . . . . . 20, 21, 22

*H.E.B Grocery Co., LP v. Lopez*,
No. 04-13-00552-CV, 2014 WL 18071362
(Tex.App.–San Antonio May 7, 2014, no pet.)
 review denied (Sept. 12, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hutchinson v. Montemayor*, 144 S.W.3d 614
(Tex.App.–San Antonio 2004, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Collom & Carney*, 62 S.W.3d 924
(Tex. App.–Texarkana 2001, original proceeding). . . . . . . . . . . . . . . . . 30

*Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790
(Tex.App.-Houston [1st Dist.] 2007, no pet.).. . . . . . . . . . . . . . . . . . . . . 5

*Jelinek v. Casas,* 328 S.W.3d 526 (Tex.2010). . . . . . . . . . . . . . . . . . . . 4

*Kelly v. Rendon*, 255 S.W.3d 665
(Tex.App.-Houston [14th Dist.] 2008, no pet.).. . . . . . . . . . . . . . . . . . 8, 16

*Lo v. Gonzales*, No. 01-12-00987-CV, 2013 WL 1694938
(Tex.App.–Houston [1st Dist] April 18, 2013, no pet.). . . . . . . . . . . . . . . 25

*Lockhart v. Guyden*, 2009 WL 2050983
(Tex.App. –Houston [1st Dist], July 16, 2009, no pet.). . . . . . . . . . . . 21, 22

*Meyers v. Golden Palms Retirement & Health Ctrs., Inc.,*
No. 13-06-289, 2007 WL 1500819
(Tex.App.–Corpus Christi May 24, 2007, pet. denied) (mem. op.). . . . . . . 5

*Quintero v. Houston Methodist Hosp.,* No. 01-14-00448-CV,
2015 WL 831955 (Tex.App.–Houston [1st Dist.] Feb. 26, 2015, no pet.). . 25

*Rio Grande Reg'l Hosp. v. Ayala*,
13-11-00686-CV, 2012 WL 3637368
(Tex.App.–Corpus Christi Aug. 24, 2012, no pet.) (mem. op.). . . . . . . . 4, 7

*Roberts v. Williamson*, 111 S.W.3d 113 (Tex.2003). . . . . . . . . . . . . . . . . . 8

*Springer v. Johnson*, 280 S.W.3d 322
(Tex.App.–Amarillo 2008, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shenoy v. Jean*, No. 01-10-01116-CV, 2011 WL 6938538
(Tex.App.–Houston [1st Dist.] Dec. 29, 2011, no pet.). . . . . . . . . . . . 26, 27

*TTHR, L.P. v. Guyden*, 326 S.W.3d 316
(Tex.App.–Houston [1st Dist.] 2010, no pet.). . . . . . . . . . . . . . . . . . . . . . 16

*Tenet Hospitals Ltd. v. Boada*, 304 S.W.3d 528
(Tex.App.–El Paso 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 30

Tibbetts v. Gagliardi, 2 S.W.3d 659
(Tex. App.–Houston [14 Dist.] 1999, pet. denied). . . . . . . . . . . . . . . . . . 28

*Villa v. Hargrove*, 110 S.W.3d 74
(Tex.App.–San Antonio 2003, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . 6

*Walker v. Gutierrez*,
111 S.W.3d 56 (Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Wilcox v. Montalvo*, No. 13-10-611-CV, 2011 WL 1443689
(Tex.App.–Corpus Christi Apr. 14, 2011). . . . . . . . . . . . . . . . . . . . . . 25, 26

*Windsor v. Maxwell*, 121 S.W.3d 42
(Tex.App.–Fort Worth 2003, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Statutes

TEX.CIV.PRAC. & REM. CODE §74.001(a)(23). . . . . . . . . . . . . . 13, 14, 15, 16
TEX.CIV.PRAC. & REM. CODE §74.351. . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5
TEX.CIV.PRAC. & REM. CODE §74.351(a). . . . . . . . . . . . . . . . . . . . . 28, 30
TEX.CIV.PRAC. & REM. CODE §74.351(b). . . . . . . . . . . . . . . . . . . . . . . . 28
TEX.CIV.PRAC. & REM. CODE §74.351(b)(1). . . . . . . . . . . . . . . . . . . . . . 28
TEX.CIV.PRAC. & REM. CODE §74.351(r).. . . . . . . . . . . . . . 6, 7, 8, 13, 14
TEX.CIV.PRAC. & REM. CODE §74.401. . . . . . . . . . . . . . . . . . . . 9, 13, 14

Article 4590i, Section 13.01(d)
[now codified Section 74.351(b)].. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## Rules

Tex.R.App.P. 9.4(i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**RECORD REFERENCES**

The record in this cause consists of the Clerk's Record (one volume) and the Reporter's Record (three volumes). The Clerk's Record will be referred to as "C.R. p. __"; and the Reporter's Record will be referred to as "R.R. Vol. __, p.___". Documents in the Appendix will be referred to as "App. __".

**PARTY REFERENCES**

Gerald Harrington, M.D., Appellant herein, is a defendant in the trial court. For ease of reference, Gerald Harrington, M.D. will at times be referred to as "Defendant" or "Appellant." Sandra Schroeder and Duane J. Ramos, Individually and as all Heirs of the Estate of Sylvia Ramos, Deceased, Appellees herein, are the plaintiffs in the trial court. For ease of reference, they will at times be referred to as "Plaintiffs" or "Appellees."

## STATEMENT OF THE CASE

The underlying case is a health care liability claim seeking damages against Appellant, among others, which was filed on behalf of Appellees Sandra Schroeder and Duane J. Ramos, Individually and as all Heirs of the Estate of Sylvia Ramos, Deceased. (C.R. pp. 11-21) Appellant filed a Motion for Dismissal Pursuant to Section 74.351, based upon Plaintiffs' failure to comply with the statutory expert report requirements. (C.R. pp. 34-38) The trial court, Judge John D. Gabriel presiding, subsequently entered an Order Denying Defendant Gerald Harrington, M.D.'s Motion for Dismissal on March 9, 2015. (C.R. pp. 41-42; App. 1) It is from the trial court's order, which failed to dismiss Plaintiffs' health care liability claims and failed to award Defendant his attorney's fees, that Appellant now appeals. (C.R. pp. 43-45)

## ISSUE PRESENTED

**Did the Trial Court Abuse its Discretion in Failing to Dismiss Plaintiffs' Health Care Liability Claims When Plaintiffs Failed to Serve Appellant with a Proper Section 74.351 Expert Report?**

CASE NO. 04-15-00136-CV

IN THE COURT OF APPEALS FOR THE
FOURTH JUDICIAL DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

GERALD HARRINGTON, M.D.,

Appellant

vs.

SANDRA SCHROEDER AND DUANE J. RAMOS, INDIVIDUALLY AND
AS ALL HEIRS OF THE ESTATE OF SYLVIA RAMOS, DECEASED,

Appellees

APPEAL FROM CAUSE NUMBER 2014-CI-06284
288TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
JUDGE JOHN D. GABRIEL

**APPELLANT'S BRIEF**

TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW GERALD HARRINGTON, M.D., Appellant in the above-entitled and numbered cause, and files this Appellant's Brief, and for such brief would respectfully show unto this Honorable Court as follows:

# I.

## STATEMENT OF FACTS

On June 29, 2014, Plaintiffs filed Plaintiffs' First Amended Original Petition, which alleged a health care liability claim against Defendant Gerald Harrington, M.D., among others. (C.R. pp. 11-21) In their First Amended Original Petition, Plaintiffs for the first time alleged medical negligence claims against Appellant. *Id.* On October 14, 2014, Plaintiffs served Appellant with the expert report and Curriculum Vitae of Loren Lipson, M.D., purportedly served pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code. (C.R. pp. 32-33; R.R. Vol. 3, Exs. 1 and 2) Such report was deficient in several respects. (C.R. pp. 26-31; R.R. Vol. 3, Ex. 1)

On October 31, 2014, Appellant filed his Objections to Plaintiffs' Expert Report Pursuant to Section 74.351 of the Texas Civil Practice and Remedies Code. (C.R. pp. 26-31) On November 4, 2014, Plaintiffs filed their "Notice of Compliance: Service of Chapter 74 Report." (C.R. pp. 32-33) On February 12, 2015, Appellant filed his Motion for Dismissal Pursuant to Section 74.351 of the Texas Civil Practice and Remedies Code. (C.R. pp. 34-38)

On March 2, 2015, a hearing was conducted on Defendant Harrington's Motion to Dismiss. (R.R. Vols. 1-3) At no time prior to or during the hearing

was a motion for extension of time requested, either orally or in writing, by Plaintiffs.  (C.R. pp. 55-63; R.R. Vol. 2, pp. 4-51)  After the hearing, on March 9, 2015, the trial court denied Appellant's motion to dismiss.  (C.R. pp. 41-42)  Appellant then timely appealed the trial court's denial of the motion for dismissal to this Court.  (C.R. pp. 43-45)

## II.

## SUMMARY OF ARGUMENT

Section 74.351 of the Texas Civil Practice & Remedies Code mandates that a trial court dismiss a plaintiff's medical negligence cause of action with prejudice, and award costs and attorney's fees, if a plaintiff fails to comply with the statutory requirement to serve an expert report in accordance with §74.351 of the Texas Civil Practice and Remedies Code.  In the instant case, Plaintiffs failed to serve Appellant with an expert report that was written by a qualified expert and failed to serve a report which properly set out any causation.  Accordingly, the trial court abused its discretion by denying Defendant's  motion for dismissal; abused its discretion by failing to dismiss Plaintiffs' health care liability cause of action; and abused its discretion by failing to award Appellant the reasonable attorney's fees and costs of court incurred by Appellant in his defense of this lawsuit.  Such denial was arbitrary,

unreasonable and without reference to guiding rules and legal principles, as the clear and unambiguous statutory language and applicable case law establish that Plaintiffs' purported expert report was deficient. Accordingly, dismissal of Plaintiffs' claims against Appellant was mandatory.

## III.

## ARGUMENT

## ISSUE PRESENTED (RESTATED)

**The Trial Court Abused its Discretion in Denying Defendant's Motion for Dismissal Because Section 74.351(b) of the Texas Civil Practice & Remedies Code Clearly Mandates Such a Dismissal When a Proper Expert Report Is Not Timely Served.**

### A.    *An Abuse of Discretion Standard of Review Applies to the Denial of a Motion for Dismissal Pursuant to Section 74.351*

The denial of the motion to dismiss is reviewed for abuse of discretion. *Jelinek v. Casas,* 328 S.W.3d 526, 539 (Tex.2010); *Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)); *see also Rio Grande Reg'l Hosp. v. Ayala*, 13-11-00686-CV, 2012 WL 3637368 (Tex.App.–Corpus Christi Aug.

24, 2012, no pet.) (mem. op.)*; Meyers v. Golden Palms Retirement & Health Ctrs., Inc.,* No. 13-06-289, 2007 WL 1500819 (Tex.App.–Corpus Christi May 24, 2007, pet. denied) (mem. op.). However, an appellate court may not reverse a trial court's discretionary ruling simply because it might have decided it differently. *Walker,* 111 S.W.3d at 62.

To the extent resolution of this issue requires interpretation of a statute, this Court should review the ruling under a *de novo* standard. *See Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 794 (Tex.App.–Houston [1st Dist.] 2007, no pet.); *Buck v. Blum,* 130 S.W.3d 285, 290 (Tex.App.–Houston [14th Dist.] 2004, no pet.).

## B.     The Expert Report Served by Plaintiffs Did Not Represent a "Good Faith" Effort to Comply with Section 74.351.

The trial court abused its discretion by denying Defendant Harrington's motion for dismissal because Plaintiffs failed to timely serve an expert report or reports that complied with all of the requirements of Section 74.351 of the Texas Civil Practice & Remedies Code.

### 1.     The Section 74.351 Expert Report Requirements are Clear and Unambiguous

In order to comply with Section 74.351, an expert report must be written by a qualified expert and must set out the standard of care for each

defendant, describe how each defendant breached that standard, and explain how said breach caused the plaintiff's injury. Tex. Civ. Prac. & Rem. Code Ann. §74.351(r)(5) & (6)) (West) (App. 2); *Palacios*, 46 S.W.3d at 878. Additionally, Section 74.351, requires that an expert report must "represent a good faith effort to comply with the statutory definition." *Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Palacios*, 46 S.W.3d at 878 (Tex. 2001); *Alfonso v. Bracamontes*, 2005 WL 1693677 (Tex.App.–Corpus Christi-Edinburg, July 21, 2005, no pet.); *Villa v. Hargrove*, 110 S.W.3d 74, 78 (Tex.App.–San Antonio 2003, pet. denied). "Although the report need not marshal all the plaintiff's proof, it *must* include the expert's opinions on the three statutory elements–standard of care, breach, and causation." *Palacios*, 46 S.W.3d at 878-79. (emphasis added).

The Texas Supreme Court has held that, when determining the adequacy of an expert report, the only relevant information is contained within the four corners of the report itself. *Palacios*, 46 S.W.3d at 878. "This requirement precludes a court from filling in gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Austin Heart v. Webb*, 228 S.W.3d 276, 279 (Tex.App.–Austin 2007, no pet.)(quoting *Bowie*, 79 S.W.3d at 53).

2. <u>Dr. Lipson's Report is Deficient in Two Areas, as Demonstrated by the Relevant Statute and Applicable Case Law</u>

In the instant case, the report of Loren Lipson, M.D., the only report provided to this Defendant by Plaintiffs, does not represent a "good faith" effort to comply with the statute and applicable case law. While the report was filed and served timely; while the report does set out the alleged standards of care for Dr. Harrington; and while the report does set out alleged deviations from the alleged standards of care by Dr. Harrington; the report fails to establish that Dr. Lipson is competent to testify as an expert witness, as defined by §74.351(r)(5), and the report fails to set forth the causal relationship between Defendant Harrington's alleged breaches of the standards of care and Plaintiffs' alleged injury.

(a) *The Qualifications of Dr. Lipson are Not Adequate to Demonstrate Competence to Testify as to Negligence and Causation*

An expert must establish that he is qualified to provide the opinions required by Section 74.351(r)(6). *Rio Grande Reg'l Hosp. v. Ayala*, 13-11-00686-CV, 2012 WL 3637368 (Tex.App.–Corpus Christi Aug. 24, 2012, no pet.) The qualifications must appear in the expert report and attached curriculum vitae; they cannot be inferred or provided by extrinsic evidence.

See *Baylor College of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex.App.-Houston [14th Dist.] ) 2009, no pet.).

In order to qualify as an expert in a particular case, a physician need not be a practitioner in the same specialty as the defendant physician. *Kelly v. Rendon*, 255 S.W.3d 665, 674 (Tex.App.-Houston [14th Dist.] 2008, no pet.). The test is whether the report and curriculum vitae establish the witness' knowledge, skill, experience, training, or education regarding the specific issue before the court, which would qualify the expert to give an opinion on that particular subject. *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex.2003).

Section 74.351(r)(5) of the Texas Civil Practice & Remedies Code provides, in pertinent part, as follows:

"Expert" means

(A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, *an expert* qualified to testify under the requirements of Section 74.401;

. . .

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, *a physician* who is otherwise

qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

(Emphasis added)

Section 74.401 of the Texas Civil Practice & Remedies Code provides, in pertinent part, as follows:

(b) For the purpose of this section, "practicing medicine" or "medical practice" includes, but is not limited to, training residents or students at an accredited school of medicine or osteopathy.

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and

(2) is actively practicing medicine in rendering medical care services relevant to the claim.

### (1) <u>Qualifications as to Standard of Care Opinions</u>

Plaintiffs only §74.351 report, purportedly addressing the medical care provided by Defendant Harrington, was authored by Loren Lipson, M.D. Such report and CV fail to satisfy the requirements of Section 74.401 because there is no affirmative showing that Dr. Lipson was board certified and was actively practicing medicine in rendering medical care services relevant to the claim against Dr. Harrington, at the time the claim arose or at the time the testimony is given. In her report, Dr. Lipson refers to the fact that, *during the course of*

*her career*, she has "been Board-Certified in Internal Medicine, Geriatric Medicine, and Utilization Review and Quality Assurance." (R.R. Vol. 3, Ex. 1, p. 1) She does not indicate that she is *still* board certified in any area, nor that she was board certified in any area that is relevant to the care provided by Appellant, at the time of the alleged negligence.

While her report does make mention of having served, during her extensive career, in certain positions that might be relevant to the care provided, there is no affirmative showing that Dr. Lipson was in any of those positions when the claim arose in the instant case, or at the time the §74.351 report was written. (R.R. Vol. 3, Ex. 1, pp. 1-2) A good deal of Dr. Lipson's qualifications are noted to be in the past tense. (*Id.*) The only affirmative statement of current qualifications in her report is that she is currently Professor Emeritus of Medicine, that she is currently Co-Director in Geriatric Education and is currently an Affiliate Professor for Alaskan Medical Students. (R.R. Vol. 3, Ex. 1, p. 1) Obviously, the Professor Emeritus designation is an indication that she is retired. Neither her affiliate professorship in Alaskan Medical Students nor her co-directorship in geriatric education indicate that Dr. Lipson is currently practicing medicine in the same field as Appellant or

actively practicing medicine in rendering medical care services relevant to the claim.[1]

Dr. Lipson does note that she is a consultant to the Department of Justice, State of California and New Mexico, and U.S. Department of Justice in areas of geriatric care and elder abuse. (R.R. Vol. 3, Ex. 1, p. 1) However, those statements do not affirmatively show that she is practicing medicine in areas relevant to the care at issue in this case. While Dr. Lipson states that she is familiar with "State and Federal Regulations and Codes pertaining to nursing home facilities of the type at which Sylvia Ramos was treated . . . ", she does not give any indication that the state regulations she has reviewed were Texas regulations.

Dr. Lipson's Curriculum Vitae (CV) is likewise devoid of any evidence that she is actively practicing medicine in rendering medical care services relevant to the claim, either at the time the claim arose or currently. (R.R. Vol. 3, Ex. 2) While she does note in her CV that she had a board

_____

[1] Of some import is Dr. Lipson's first statement under qualifications in her report where she notes that she is "a physician licensed and currently practicing in the State of California." (R.R. Vol. 3, Ex. 1, p. 1) She does not say that she is practicing medicine, although she later, on page 2 of her report, notes that "I am currently practicing medicine and was doing so at the time the claims described below occurred." (*Id.*, p. 2) However, there is no affirmative showing in either place that she was actively practicing medicine in rendering medical care services relevant to the claim.

certification in 1974, there is no indication that she has re-certified or that such board certification is still active. (R.R. Vol. 3, Ex. 2, p. 4)

Likewise, her CV fails to show that she is currently on the faculty, actively training residents or students, at an accredited school of medicine or osteopathy. (R.R. Vol. 3, Ex. 2, pp. 4-6) The only school of medicine that is current on her CV, under Academic Appointments, is the Keck School of Medicine, where she is a Professor Emeritus of Medicine. (R.R. Vol. 3, Ex. 2, p. 6) There is no affirmative showing that she is currently teaching residents or students in areas relevant to this case, only that she is a retired professor.

In point of fact, her CV does seem to affirmatively show that she does **not** have any active teaching assignments at an accredited school of medicine or osteopathy. (R.R. Vol. 3, Ex. 2, pp. 7-8) The only current "Teaching Responsibilities" she noted in her CV is as a Co-Director in Geriatric Education to Alaskan Medical Students at the University of Washington Medical School and as a faculty consultant in connection with the Alaska Family Medicine Residency Program. (R.R. Vol. 3, Ex. 2, p. 8) Neither of those indicate that Dr. Lipson is actively training residents or students in areas of medicine relevant to the claims in this case.

Suffice it to say that, while it cannot be said with certainty that Dr. Lipson is **not** practicing medicine as defined by Section 74.401, it is clear that, other than her conclusory statement that she is qualified to render expert opinions on the standard of care, there is no affirmative showing in Dr. Lipson's report or CV that she is actively practicing medicine, as defined by §74.401 of the Texas Civil Practice and Remedies Code.

### (2) Qualifications as to Medical Causation Opinions

Likewise, there is no affirmative showing that Dr. Lipson is qualified to testify as to causation. First it should be pointed out that the qualification for an expert as to medical negligence differs from that of an expert as to causation. As can be seen above, there is a distinct difference in that 74.351(r)(5)(C) requires the expert to be a "physician," whereas §74.351(r)(5)(A) does not. Section 74.001(a)(23) defines a "Physician" as "an individual licensed to practice medicine in this state."[2]

As can be seen from the CV of Dr. Lipson, she is not licensed to practice medicine in the State of Texas and is only licensed to practice medicine in the State of California. (R.R. Vol. 3, Ex. 2, p. 3) As noted by this Court,

---

[2] A court "must presume that every word in a statute is included purposefully." See *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981).

the applicable definition of an "expert" is found in section 74.351(r)(5)(C), which specifically requires "a *physician* who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(C) (emphasis added). [footnote omitted]

. . .

The second report submitted by Cuellar was that of Dr. Cervantes. The record indicates Dr. Cervantes is licensed to practice medicine in the state of Coahuila, Mexico. Because nothing in the record indicates Dr. Cervantes is licensed in Texas or any of the states of the United States, he does not meet the statutory definition of a "physician," and, therefore, is not qualified to testify on the issue of causation. See TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001(a)(23)(A), 74.401(g)(1), 74.403 (Vernon 2005)

*Cuellar v. Warm Springs Rehab. Found.*, No. 04-6-00698-CV, 2007 WL 3355611 (Tex.App.–San Antonio Nov. 14, 2007).  Even thought the expert in the instant case is not licensed in Texas, she is licensed in one of the states of the Untied States.  (R.R. Vol. 3, Ex. 2, p. 3)  Therefore, the *Cuellar* case is not on all fours.  However, it is instructive in pointing out that the definition of "physician" is important.

The only courts that have addressed this issue have rationalized that the Legislature did not mean what it wrote.  In a case out of the El Paso Court of Appeals, the Court directly addressed the question as to whether the causation expert must be licensed in Texas.  *Tenet Hospitals Ltd. v. Boada*, 304 S.W.3d 528 (Tex.App.–El Paso 2009).  In such case, Tenet Hospitals

challenged the qualifications of the expert physicians because neither was licensed to practice medicine in Texas. *Id*. at 536. The crux of Tenet Hospital's argument was that a physician licensed in another state may opine as to the applicable standard of care and any breaches thereof, but only a physician licensed in Texas may opine as to causation. *Id*. The 8th Court of Appeal's analysis of this issue included that court looking at the interplay between various provisions of Chapter 74. The *Boada* court concluded that the plain language of the statute did not mean what it said.

It was noted in that case that the Boadas argued that the definition of "physician" found in Subchapter A, Section 74.001(a)(23), is inapplicable because not only does it define a physician as an individual who is licensed to practice medicine in Texas, it also defines professional associations, partnership entities, nonprofit health corporations and other business entities as being physicians. *Id.* at 538. The Boadas postulated that the real purpose of Section 74.001(a)(23)(A-E) was to identify potential defendants-both natural beings and various non-natural entities. *Id.* The El Paso Court of Appeals agreed. However, that does not explain, if the definition of "physician" is only to define potential defendants, why the Act, in §74.351, refers to certain defendants as a "defendant physician" Under the rationale of the *Boada* case, that would be a redundant term.

In *Springer v. Johnson*, 280 S.W.3d 322, 325 (Tex.App.–Amarillo 2008, no pet.) the appellant also claimed that an "expert" for purposes of an expert report on the issue of the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in a health care liability claim is a "physician" as defined by 74.001(a)(23), which by definition would only include an individual licensed to practice medicine in Texas. The Amarillo Court held that a physician was not required to be licensed to practice medicine in Texas to be qualified to provide expert opinion on causation. *Id.* at 330.

Suffice it to say that, notwithstanding the holdings in *Boada*; *Kelly v. Rendon*, 255 S.W.3d 665, 675 (Tex.App.–Houston [14th Dist.] 2008, no pet.); Springer; and *TTHR, L.P. v. Guyden*, 326 S.W.3d 316, 321 (Tex.App.–Houston [1st Dist.] 2010, no pet.); the plain language of the statute requires that, where causation is concerned, the Legislature intended the locality rule to be applicable and an expert testifying as to causation must be licensed in the State of Texas.

Additionally, nothing in Dr. Lipson's report or CV affirmatively shows that she is qualified to testify as to causation – the intracranial hemorrhage and death of Sylvia Ramos was caused by documentation errors, etc. – other than a conclusory statement that she is "competent to testify as an expert on the

subject of medical causation in the case of Sylvia Ramos." (R.R. Vol.3, Exhibit 1, p. 2) Accordingly, Dr. Lipson is not qualified to render opinions as to causation.

(b) *No Causal Link Was Established in Plaintiffs' Expert Report*

Furthermore, Plaintiffs' expert report wholly fail to establish the required causal link between Dr. Harrington's alleged breaches of the claimed deviations from the standard of care and the damages being claimed and the death of Sylvia Ramos. In their petition, Appellees alleged that Appellant was negligent and deviated from the standard of care in the following manners:

> Dr. Harrington was negligent in the care and treatment of Sylvia Ramos. Dr. Harrington's negligent care was a proximate cause of the pain and suffering, injuries and death of Ms. Ramos.

> Plaintiffs would show that the negligent acts and omissions of Dr. Harrington constitute negligence and that such negligent acts and/or omissions, taken singularly or in combination with others, were a direct and proximate cause of Sylvia Ramos' pain and suffering, injuries, death and the damages being sought herein by Plaintiffs.

(C.R. pp. 18-19)

In the present case, Dr. Lipson opines that:

> Dr. Harrington breached the standard of care when he failed to adequately supervise the medical care of Ms. Ramos. Dr. Harrington also failed to intervene in regard to the substandard care provided to Ms. Ramos at Trisun.

(R.R. Vol. 3, Ex. 1, p. 5)   From these brief statements, the trial court, Defendant Harrington and any appellate court, are required to guess as to how the alleged breaches of the standards actually caused Plaintiffs' injuries.

"A report cannot merely state the expert's conclusions about these elements."  *Bowie* 79 S. W.2d at 52 (quoting *Palacios,* 46 S.W.3d at 879). "Rather, the expert must explain the basis of his statements to link his conclusions to the facts."  *Id.* (quoting *Earle v. Ratliffe*, 998 S.W.2d 882, 890 (Tex. 1999)).  Furthermore, a report that merely states that the injury followed the act is not a sufficient good faith effort to comply with the statute.  *Windsor v. Maxwell*, 121 S.W.3d 42, 49 (Tex.App.–Fort Worth 2003, pet. denied).

Nowhere in her report does Dr. Lipson even attempt to articulate any type of explanation as to how Dr. Harrington's alleged failure to follow these standards of care caused Sylvia Ramos' death, or even explain how these alleged violations caused Plaintiffs' damages.  Although Plaintiffs' expert report offers standards of care regarding inappropriate documentation, there can be no causal connection between inadequate documentation and Plaintiffs' injury.  *See Baptist Hosp. of South Texas v. Carter*, 2008 WL 2917109 (Tex.App.–Beaumont July 31, 2008, no pet.)(holding that the report contained insufficient facts to explain how the second surgery would have

been avoided if the written report of the first surgery would have been timely included in the patient's chart).

The Texas Supreme Court has held that an expert report does not represent a good faith effort to comply with Section 13.01 of the Texas Medical Liability and Insurance Improvement Act (now §74.351) when it simply opines that plaintiff "might have had the possibility of a better outcome" without explaining the causal connection between defendant's breach and Plaintiffs' injury. *Bowie*, 79 S.W.3d at 53. In *Bowie*, plaintiff sustained injuries in a car accident and was taken to Bowie Memorial Hospital for x-rays, where a physician's assistant allegedly misplaced or misread the x-ray and failed to discover a fracture on plaintiff's foot. *Id.* Plaintiff was referred to an orthopedic surgeon who treated her knee but failed to discover injuries to her foot until one month later. *Id.*

The plaintiff in Bowie's expert report stated "if the x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then Wright would have had the possibility of a better outcome." *Id.* The defendant in *Bowie* moved to dismiss on the basis that the expert report "failed to establish how any act or omission [by the defendant] caused or contributed to [plaintiff's] injuries." *Id.* at 51. The Texas Supreme Court agreed with the defendant noting, that "[w]e cannot infer from this statement

that [defendant's] alleged breach precluded [plaintiff] from obtaining a quicker diagnosis and treatment." *Id.*

The Thirteenth Court of Appeals has also held that when an expert fails to link his conclusions to the facts, conclusory statements about the injuries following the alleged breaches of the standard of care do not suffice to establish causation. *Fulp v. Miller*, 286 S.W.3d 501 (Tex.App.–Corpus Christi-Edinburg 2009, no pet.). In *Fulp*, the expert report set forth the standards of care applicable to Dr. Fulp for the orthopedic treatment of the plaintiff. *Id.* at 208. The report then criticized Dr. Fulp for performing a surgery that was not indicated, failing to perceive the plaintiff's post-operative condition and failing to intervene or refer the plaintiff to another surgeon. *Id.* at 507-08. The sole statement as to causation was that "[a]s a result of the breach of the standard of care by Dr. Fulp as discussed above, Mr. Miller sustained the following injuries/damages: . . ." *Id.* at 508. This statement was followed by a list of the plaintiff's injuries. *Id.* This Court held that these statements were not enough to satisfy the statutory requirements. *Id.*

The First Court of Appeals has also held, in a case similar to the instant case involving multiple health care providers, that where an expert report is filled with nothing more than conclusory statements, the causation element is not satisfied. *Gray v. CHCA Bayshore, L.P.*, 189 S.W.3d 855, 859

(Tex.App.–Houston [1ˢᵗ Dist.] 2006, no pet.).  In *Gray*, the plaintiffs' expert report separately listed the standards of care and breaches of both defendants, but the Houston Court noted that the standards listed for each defendant were identical.  *Id.*

The report in that case also stated that the doctor and hospital nurses "failed to meet the standard of care when they neglected to monitor and detect a malpositioned left knee resulting in a dislocated left patella on December 5, 2001.  The failure to monitor and detect the malpositioned left knee resulted in a dislocated left patella, severe pain and suffering, and subsequent medical treatment." *Id.*  The First Court of Appeals held that such statements do not state ***with any specificity*** how the defendants' departures from the stated standard of care caused plaintiff's knee injury.  *Id.* (emphasis added).  Instead, the First Court of Appeals found such statements to be conclusory, as the report did not flesh out how the defendants' failure to monitor actually caused the injury.  *Id.*

In *Lockhart v. Guyden*, 2009 WL 2050983 (Tex.App. –Houston [1ˢᵗ Dist], July 16, 2009, no pet.), the First Court of Appeals offers additional guidance as to the language necessary to establish the causal link.  In *Lockhart*, the expert report contained the following language as to causation:

Furthermore, based on my qualifications discussed above and in my CV, the medical science discussed in the "general section" above, the medical facts summarized above, that but for the negligence of Dr. Lockhart as set forth in this section, Natalie Guyden would not have suffered from and died from progressive urosepsis. That is, more likely than not had Dr. Lockhart timely and appropriately responded to the multiple pages allegedly made by the nursing staff at the Center after Natalie Guyden's condition had acutely changed in the early morning hours of June 16, 2006, the patient would have been transferred in a timely manner to an acute care facility for the appropriate and indicated treatment of her urosepsis as detailed above in the "General" section and elsewhere. Consequently, Natalie Guyden would not have died from urosepsis. Thus, it is my professional opinion to a reasonable degree of medical probability that Dr. Lockhart's negligent medical care was a proximate cause of Natalie Gudyen's injuries from a urinary tract infection and her death from urosepsis.

*Id.* The First Court of Appeals held that "[n]owhere in the expert report is there a specific discussion of, and expert opinion stating, whether Natalie's death would more likely than not have been prevented in that 11-hour period with proper medical diagnosis and treatment." *Id.* The Court continued that "[b]ecause the expert report does not contain a fair summary of the basis for an opinion that Dr. Lockhart's alleged negligence proximately caused Natalie's death so as to conclude that the claim against Dr. Lockhart has merit, it is deficient as to Dr. Lockhart." *Id.*

Like the reports in *Bowie, Lockhart, Fulp,* and *Gray,* Dr. Lipson's expert report fails to describe how Dr. Harrington's alleged acts or omissions were

the cause of Sylvia Ramos' injuries and death. In the instant case, Plaintiffs'

expert report offers no explanation as to how Dr. Harrington's alleged

breaches of the standard of care by:

- Failing to adequately supervise the medical care of Ms. Ramos;
- Failing to intervene in regard to the substandard care provided to Ms. Ramos at Trisun;
- Failing to give appropriate input as to the deficiencies in Ms. Ramos' care plan concerning her past falls and wanderings;
- Failing to give appropriate input as to the deficiencies in Ms. Ramos' care plan concerning the physical altercations;
- Failing to adequately review and assist in providing input into Ms. Ramos' care plan;
- Failing to perform timely and adequate assessments of Ms. Ramos;
- Failing to adequately review Ms. Ramos' total plan of care;
- Failing to evaluate Ms. Ramos' condition;
- Failing to document adequately;
- Failing to properly document Ms. Ramos' problems; and
- Failing to discharge Ms. Ramos from Trisun;

would have prevented Resident 11191 from "violently [shoving] Ms. Ramos

into the wall causing her to fall to the floor and strike her head." (C.R. p. 14)

Plaintiffs' live pleading alleges that Ms. Ramos was subjected to

numerous verbal and physical assaults which culminated in a fatal assault on

July 16, 2012. (*Id.*) It is alleged by Plaintiffs that the cause of death listed on

the death certificate is a *"homicide."* (*Id.* at 14-15) It should be obvious to all that a homicide normally destroys the causal connection of anyone's conduct but that of the attacker.

In her report, under the heading "Causation," Dr. Lipson merely repeats her allegations of negligence, and then makes a conclusory statement that if Appellant had not been negligent that "in reasonable medical probability, Ms. Ramos would not have continued to suffer repeated falls and injuries and would not have suffered the 11-20-09 and 3-20-10 falls." (R.R. Vol. 3, Ex. 1, p. 9) She then adds that "Ms. Ramos' 11-20-09 and 3-20-10 falls and injuries were proximately caused by the breaches in the standard of care by Dr. Harrington." (*Id.*) To call these statements "conclusory" is to understate the obvious. Repeating a conclusory statement twice does not render it factual and specific.

Under the headings concerning the claimed "Mental Anguish from Resident on Resident Attacks, Threats and Abuse" and "Physical Injuries and Death from Resident on Resident Attacks, Threats and Abuse," Dr. Lipson follows the same tactic and merely repeats the alleged deviations and in a conclusory manner states that such alleged deviations from the standard of care proximately caused the alleged damages, injuries and death.

The alleged causation in the instant case is similar to alleging that if a physician had correctly interpreted and reported the results of radiological tests, that the plaintiff would have been more promptly diagnosed and would not have suffered the damages alleged. In that exact case, the Houston Court of Appeals concluded that such report required the court to infer that the plaintiff's diagnosing physician relied solely on the alleged omissions from the defendant's report, but concluded that it could not do so. *Quintero v. Houston Methodist Hosp.,* No. 01-14-00448-CV, 2015 WL 831955 (Tex.App.–Houston [1st Dist.] Feb. 26, 2015, no pet.)

In the instant case, it is alleged that if Appellant had non-negligently made appropriate recommendations, interventions or documentation, that somehow the nursing home and residents at the nursing home would have acted differently, and the injuries and death would not have occurred. Clearly numerous inferences are necessary for such a causation conclusion to be workable. Inferences are not allowed. *Lo v. Gonzales*, No. 01-12-00987-CV, 2013 WL 1694938 (Tex.App.–Houston [1st Dist] April 18, 2013, no pet.).

In another similar case, the expert report alleged that a fall happened because of negligence, which necessitated the surgery which ultimately caused the death of the patient. *Wilcox v. Montalvo*, No. 13-10-611-CV, 2011

WL 1443689 (Tex.App.–Corpus Christi Apr. 14, 2011).  The 13th Court of Appeals held that the expert was required to flesh out what the physician did wrong and how the purported failures caused the death.  *Id.*  The court found the report to be conclusory because it did not provide information linking a negligent act to the death.  *Id.*

As this Court has noted causation "is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and without which the harm would not have occurred."  *H.E.B. Grocery Co., LP v. Lopez*, No. 04-13-00552-CV, 2014 WL 18071362 (Tex.App.–San Antonio May 7, 2014, no pet.), review denied (Sept. 12, 2014).  When there are many links in the chain of events that end with the patient's death, and the expert fails to explain and support each link, the causation requirement is not met.  *Shenoy v. Jean*, No. 01-10-01116-CV,  2011 WL 6938538 (Tex.App.–Houston  [1st Dist.] Dec. 29, 2011, no pet.)

In the *Shenoy* case, the expert did not link the alleged negligence—clearing the patient for surgery—with the premature extubation that caused her death, except that one occurred before the other. That is not enough; it is only a statement of "but for" causation.  *Id.*

> If that is all that section 74.351 requires to demonstrate causation, almost any prior action taken by a health care provider could be

said to cause the ultimate outcome. For example, the referral by the emergency room physician for the surgical consultation with Dr. Shenoy also was a cause of Willie Ann's death if all that is necessary is for an event to have preceded the injury. To establish cause in fact, Mazzei had to discuss why the act or omission was a substantial factor in causing the injury and without which the harm would not have occurred.

*Id.*

In the case at bar, Plaintiffs' expert has basically claimed that, if only Appellant had done certain things, documented certain items, assisted in giving input into a care plan, and recommended that Ms. Ramos be discharged from Trisun, certain residents would not have verbally and physically assaulted Sylvia Ramos and another resident would not have caused the resident to be pushed violently down, causing her death. This is a "but for" argument only, and is insufficient to demonstrate causation.[3] Clearly causation was not established by this expert report. Lacking from Dr. Lipson's report are any statements linking Defendant Harrington's alleged negligence to the actual damages alleged.

---

[3] Utilizing this logic, if the Plaintiffs had not placed their mother in this nursing home, or if they had not left her there after being advised on numerous occasions of her situation, the alleged assaults and death would not have happened. A "but for" correlation is not enough to show causation.

3.    Conclusions

"Liability in a medical malpractice suit cannot be made to turn upon speculation or conjecture." *Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex.App.–San Antonio 2004, no pet.).  Not only was the Plaintiffs' expert not qualified to render liability and causation opinions, but the report was conclusory as to causation.    Thus, Plaintiffs' expert report is not representative of a good faith effort to comply with the statute. Accordingly, the trial court had a ministerial duty to dismiss Plaintiffs' causes of action against Appellant Harrington.

## C.    The Trial Court's Failure to Award Attorney's Fees was Also an Abuse of Discretion.

In a medical malpractice case, Section 74.351(b)(1) mandates that, upon a plaintiff's failure to comply with Section 74.351(a), the trial court **shall** award the successful defendant reasonable attorneys' fees and costs of court. TEX.CIV.PRAC. & REM §74.351(b)(emphasis added)(App. 2); *Tibbetts v. Gagliardi*, 2 S.W.3d 659 (Tex. App.–Houston [14 Dist.] 1999, pet. denied). "Statutes providing that a party 'shall' be awarded attorney's fees are not discretionary." *Abilene Diagnostic Clinic v. Downing*, 233 S.W.3d 532,535 (Tex.App.–Eastland 2007, pet. filed)(quoting *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)).  If the requirements of Article 4590i, Section 13.01(d)

[now codified Section 74.351(b)] are not met, the court must dismiss the case with prejudice **and** grant the defendant its costs and attorney's fees. *Id.*

Factors which the court may consider in determining the amount of attorneys' fees to award include: 1) the time and labor required, novelty and difficulty of the question presented, and the skill required; 2) the likelihood that acceptance of employment precluded other employment; 3) the fee customarily charged for similar services; 4) the amount involved and the results obtained; 5) the time limitations imposed by the client or the circumstances; 6) the nature and length of the professional relationship with the client; 7) the experience, reputation, and ability of the lawyer performing the services; and 8) whether the fee is fixed or contingent. *Arthur Anderson & Co. v. Perry Equipment Corp.* 945 S.W.2d. 812, 818 (Tex. 1997).

In the instant case, because the motion to dismiss should have been granted, this Court should remand the case to the trial court for an appropriate award of attorney's fees. In denying Defendant Harrington's motion for dismissal, the trial court also failed to award any attorneys' fees to Appellant Harrington, and such failure was an abuse of discretion.

## D.  Conclusions

Quite simply, Plaintiff failed to produce an expert report which was authored by a competent expert and failed to produce a report which describes the causal connection between Appellant's alleged breaches from the standard of care and the Plaintiffs' alleged injuries.  Consequently, Appellant is entitled to dismissal of Plaintiffs' claims with prejudice and an award of a reasonable and necessary attorney's fee and costs, pursuant to Section 74.351(a) of the Texas Civil Practice & Remedies Code.

The Texas Supreme Court has held that a report which omits even one required element cannot be considered a good faith effort to comply with the statutory requirements.  *Palacios*, 46 S.W.3d at 879. Furthermore, as noted by several courts of appeals, "[w]here a report totally omits one of the three required elements, ***the trial court has a ministerial duty to dismiss the lawsuit with prejudice and has no discretion to do otherwise.*** *In re Tenet Hospitals,* 116 S.W.3d 821, 827 (Tex.App.-El Paso, 2003, org. proceeding); *In re Collom & Carney*, 62 S.W.3d 924, 928 (Tex. App.–Texarkana 2001, original proceeding).  Here the trial court clearly failed to correctly apply the law when it denied Defendant's Motion for Dismissal Pursuant to Section 74.351(b) of the Texas Civil Practice & Remedies Code.  The trial court had

no discretion to do anything but dismiss the case with prejudice to its refiling, and award Appellant his attorneys' fees.

## IV.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant GERALD HARRINGTON, M.D. prays that the order Denying Defendant Gerald Harrington, M.D.'s motion for dismissal be reversed; that this Court remand the case to the trial court to enter an order that Plaintiffs' causes of action against Appellant Gerald Harrington, M.D. be dismissed with prejudice; that this Court remand the case to the trial court so that Appellant be awarded his reasonable and necessary attorneys' fees incurred through the dismissal of the case against him, together with appropriate appellate fees, in the event of a further appeal; and Appellant further prays that this Court also grant Appellant such other and further relief to which he may be justly entitled.

Respectfully submitted,

HOLE & ALVAREZ, L.L.P.
P. O. Box 720547
McAllen, Texas  78504-0547
Telephone:      (956) 631-2891
Telecopier:      (956) 631-2415
E-Mail:      Mail@HoleAlvarez.com


By:   /s/ Ronald G. Hole
          Ronald G. Hole
          State Bar  No. 09834200

          **ATTORNEYS FOR APPELLANT
          GERALD HARRINGTON, M.D.**


## CERTIFICATE OF COMPLIANCE

In compliance with Tex.R.App.P. 9.4(i)(3), I, Ronald G. Hole, hereby certify that this Appellants' Brief, excluding the sections to be excluded, contains 6,698 words.  I have relied on the word count of the computer program used to prepare this document, WordPerfect X3®

/s/ Ronald G. Hole
Ronald G. Hole

## <u>CERTIFICATE OF SERVICE</u>

I, Ronald G. Hole, hereby certify that a true and correct copy of the above Appellants' Brief has, on this the **20th** day of **April 2015**, been served via **electronic transfer through an online filing service,** to the following counsel of record:

*Attorneys for Plaintiffs/Appellees*
Mr. Byron B. Miller
Mr. Michael D. Maloney
Ms. Erica O. Maloney
Law Offices of Pat Maloney, PC
322 W. Woodlawn Ave.,
San Antonio, Texas 78212
**E-MAIL: Byron@maloneylawgroup.com**
**E-MAIL: Michaelm@maloneylawgroup.com**
**E-MAIL: Ericam@maloneylawgroup.com**

*Attorney for Defendants*
*PM Management – Windcrest NC, LLC*
*d/b/a Trisun Care Center Windcrest*
Ms. Emily J. Davenport
Reed, Claymon, Meeker
  & Hargett, P.C.
5608 Parkcrest Drive, Suite 200
Austin, Texas 78731
**E-Mail: edavenport@rcmhlaw.com**

*Attorneys for Defendant*
*Setters Medical Group, P.A.*
Mr. W. Richard Wagner
Wagner & Cario, LLP
7705 Broadway
San Antonio, Texas 78209
**E-Mail: rwagner@wagnercario.com**

*Attorneys for Defendants*
*Rodolfo Zarate, M.D. and*
<u>*Zarate Medical Group, P.A.*</u>
Ms. Lisa A. Rocheleau
Boone, Rocheleau & Rodriguez, P.L.L.C.
10101 Reunion Place, Suite 600
San Antonio, Texas 78209
**E-Mail: <u>lrocheleau@br-lawfirm.com</u>**

/s/ Ronald G. Hole
Ronald G. Hole

BCC:RAM-HAR\APP

# Appendix

# INDEX OF APPENDIX

Tab 1    Order Denying Defendant Gerald Harrington, M.D.'s Motion for Dismissal Pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code

Tab 2    Tex. Civ. Prac. & Rem. Code Ann. §74.351 (West)


2014CI06284 -D288

CAUSE NO. 2014-CI-06284

| | | |
|---|---|---|
| SANDRA SCHROEDER AND | § | IN THE DISTRICT COURT |
| DUANE J. RAMOS, INDIVIDUALLY AND | § | |
| AS ALL HEIRS TO THE ESTATE OF | § | |
| SYLVIA RAMOS, DECEASED | § | |
| | § | |
| VS. | § | |
| | § | 288TH JUDICIAL DISTRICT |
| | § | |
| PM MANAGEMENT – WINDCREST NC, | § | |
| LLC D/B/A TRISUN CARE CENTER | § | |
| WINDCREST, GERALD HARRINGTON, | § | |
| M.D., SETTERS MEDICAL GROUP, P.A., | § | |
| RUDOLFO ZARATE, M.D. AND ZARATE | § | |
| MEDICAL GROUP, P.A. | § | BEXAR COUNTY, TEXAS |

## ORDER DENYING DEFENDANT GERALD HARRINGTON, M.D.'S MOTION FOR DISMISSAL PURSUANT TO SECTION 74.351 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

On this day came on to be considered Defendant Gerald Harrington, M.D.'s Motion for Dismissal Pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code in connection with the above-referenced cause. Plaintiffs appeared by and through their attorneys of record. Defendant appeared by and through his attorney of record.

After reviewing the file, after considering the evidence submitted and after hearing arguments of counsel, the Court is of the opinion that Defendant Gerald Harrington, M.D.'s Motion for Dismissal Pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code should be denied. Accordingly, it is hereby

ORDERED, ADJUDGED and DECREED that Defendant Gerald Harrington, M.D.'s Motion for Dismissal Pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code be, and hereby is, **DENIED**.

SIGNED FOR ENTRY this the ___9___ day of ___March___, 2015.

_____
Judge Presiding

RECEIVED

MAR - 9 2015

Hole & Alvarez, L.L.P

2

COPY TO:

Mr. Ronald G. Hole
Hole & Alvarez, L.L.P.
P. O. Box 720547
McAllen, Texas 78504-0547
Email: Mail@HoleAlvarez.com

Mr. W. Richard Wagner
Wagner & Cario, LLP
7705 Broadway
San Antonio, Texas 78209
E-Mail: rwagner@wagnercario.com

BCC:RAM-HAR:PLO

Mr. Michael D. Maloney
Ms. Erica O. Maloney
Byron B. Miller
Law Offices of Pat Maloney, PC
322 W. Woodlawn Ave.
San Antonio, Texas 78212
E-Mail: michaelm@maloneylawgroup.com
E-Mail: ericam@maloneylawgroup.com
Email: byron@maloneylawfirm.com

Ms. Emily Davenport
Kemp Smith LLP
816 Congress Avenue, Suite 1260
San Antonio, Texas 78205
Austin, Texas 78701-2443
Email: edavenport@kempsmith.com

Ms. Lisa A. Rocheleau
Boone, Rocheleau & Rodriguez, P.L.L.C.
10101 Reunion Place, Suite 600
San Antonio, Texas 78209
E-Mail: lrocheleau@br-lawfirm.com

---

> Vernon's Texas Statutes and Codes Annotated
>   Civil Practice and Remedies Code (Refs & Annos)
>     Title 4. Liability in Tort
>       Chapter 74. Medical Liability (Refs & Annos)
>         Subchapter H. Procedural Provisions (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 74.351

§ 74.351. Expert Report

Effective: September 1, 2013
Currentness

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

(d) to (h) [Subsections (d)-(h) reserved]

(i) Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

(j) Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

(k) Subject to Subsection (t), an expert report served under this section:

   (1) is not admissible in evidence by any party;

   (2) shall not be used in a deposition, trial, or other proceeding; and

   (3) shall not be referred to by any party during the course of the action for any purpose.

(*l*) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

(m) to (q) [Subsections (m)-(q) reserved]

(r) In this section:

   (1) "Affected parties" means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.

   (2) "Claim" means a health care liability claim.

   (3) [reserved]

   (4) "Defendant" means a physician or health care provider against whom a health care liability claim is asserted. The term includes a third-party defendant, cross-defendant, or counterdefendant.

   (5) "Expert" means:

      (A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

      (B) with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402;

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

(E) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

(6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

(s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

(2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and

(3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

(t) If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

(u) Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

**Credits**
Added by Acts 2003, 78th Leg., ch. 204, § 10.01, eff. Sept. 1, 2003. Amended by Acts 2005, 79th Leg., ch. 635, § 1, eff. Sept. 1, 2005; Acts 2013, 83rd Leg., ch. 870 (H.B. 658), § 2, eff. Sept. 1, 2013.

Notes of Decisions (1863)

V. T. C. A., Civil Practice & Remedies Code § 74.351, TX CIV PRAC & REM § 74.351

Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.